The STATE of Ohio, Appellee,

v.

ELKINS, Appellant.

[Cite as State v. Elkins, 148 Ohio App.3d 370, 2002-Ohio-2914.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1069.

Decided June 11, 2002.

Ron O'Brien, Franklin County Prosecuting Attorney, and Jennifer L. Coriell, Assistant Prosecuting Attorney, for appellee.

Todd W. Barstow, for appellant.

PEGGY BRYANT, Judge.

{¶ 1} Defendant-appellant, David Elkins, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty on multiple counts of aggravated robbery, robbery, felonious assault, and possession of drugs, including a finding that defendant is a major drug offender, and single counts of possession of criminal tools, failure to comply with an order or signal of a police officer, and breaking and entering.

{¶ 2} According to the state's evidence, on December 13, 2000, at approximately 4:56 a.m., Groveport police received an alarm that a robbery was in progress at Groveport Pharmacy. Officer Michael Sturgill of the Groveport Police Department responded to the call and arrived at the scene within minutes. There Sturgill observed damage to the front door and another door standing ajar. On the west side of the pharmacy, Sturgill noticed that the door was slamming shut; he observed a suspect, wearing a plaid garment, exiting through a hole in the fence into an adjacent field. Sturgill pursued the suspect into the field, where he also observed two other suspects.

{¶ 3} The suspect Sturgill had first observed fleeing the scene carried what appeared to be a trash bag. The suspect spun around and appeared to swing something in the direction of Sturgill, who ordered the suspect to stop. The suspect continued to flee in the direction of a nearby apartment complex. As Sturgill approached the apartment complex, he observed another of the suspects. Sturgill ordered him to stop, but the suspect resumed his flight. As Sturgill turned a corner, he lost sight of the suspect for approximately two to four seconds. After turning the corner, Sturgill observed a black male sitting in a van. With his firearm drawn, Sturgill gave repeated orders for the suspects to stop and come out; Sturgill heard yelling within the van. The driver of the van then started the vehicle and shifted in reverse.

{¶ 4} A high-speed chase ensued, during which a bench seat was thrown from the van in the direction of pursuing law enforcement authorities. The suspects eventually drove into a field near a trailer park and collided with law enforcement vehicles. After the van stopped, two suspects attempted to flee from the van,

while a third suspect remained in the front passenger seat. Law enforcement authorities quickly apprehended defendant, the driver of the van, as well as the suspect who sat in the front passenger seat. A third suspect, however, exited a side door of the van and fled, but was apprehended.

{¶ 5} At the direction of a police detective, Officer Sturgill conducted an inventory of the van. Items found in the van included clothes, trash, a ski mask, gloves, a box that contained various papers, a police scanner, garbage bags, two lighters, crack cocaine, and tools, including a knife, socket wrench, sockets, two screwdrivers, a large wrench, a heavy pair of pliers, and wire cutters. Sixty-four dollars were recovered from one of the suspects.

{¶ 6} Following the suspects' arrests, police reviewed the audiotapes from the pursuit. Based on this review, police determined that a trash bag with potential evidence might be in the field where the suspects were apprehended. Later that same day, Sturgill returned to the crime scene and recovered a trash bag near the location where the suspect who had fled from the van was apprehended. The trash bag consisted of an inner and outer bag, and a pharmaceutical bottle with a Groveport Pharmacy tag protruding from the outer trash bag. A ski mask, other clothing, and narcotics were found in the outer trash bag. More narcotics were found in the inner bag.

{¶ 7} At trial, a Groveport Pharmacy pharmacist testified that, when she arrived to work the following day, she observed that the front door to the pharmacy and an interior door had been pried open. According to this pharmacist, the pharmacy was in general disarray, the entire narcotics cabinet was emptied, several controlled drugs were dispersed, and shelves were removed. In addition, $64 was missing.

{¶ 8} By indictment filed on December 22, 2000, defendant was charged with two counts of aggravated robbery, four counts of robbery, two counts of felonious assault, one count of breaking and entering, three counts of theft, one count of possession of criminal tools, one count of failure to comply with an order or signal of a police officer, and nine counts of possession of drugs with specification of major drug offender as to one of the possession of drugs counts. Two other co-defendants were also charged in this indictment.

{¶ 9} A jury trial was held. At the close of the state's case, the state nolle prosequied three counts of theft against defendant. The jury rendered guilty verdicts on all of the remaining counts. The trial court determined defendant to be a major drug offender and sentenced him accordingly. Defendant timely appeals, assigning the following errors:

{¶ 10} "I. The trial court, in sentencing appellant to both the maximum sentence for a first degree felony and an additional sentence as a major drug

offender, violated appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution.

{¶ 11} "II. Defendant-appellant's trial counsel was ineffective, thereby denying him his right to effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

{¶ 12} "III. The trial court failed to make the required findings in imposing a major drug offender sentence upon appellant.

{¶ 13} "IV. The trial court erred to the prejudice of the defendant-appellant by improperly sentencing him to consecutive terms of actual incarceration in contravention of Ohio's sentencing statutes.

{¶ 14} "V. The trial court erred to the prejudice of the defendant-appellant by improperly sentencing him to terms of actual incarceration which were longer than the minimum term in contravention of Ohio's sentencing laws."

{¶ 15} Relying on *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, defendant's first assignment of error contends that the trial court violated defendant's due process rights under the Fourteenth Amendment to the United States Constitution when the trial court sentenced him to both the maximum sentence for a first degree felony and an additional sentence as a major drug offender.

{¶ 16} In *Apprendi*, Charles C. Apprendi, Jr., fired several bullets into the home of an African–American family that had recently moved into a previously all-white neighborhood. A New Jersey grand jury indicted Apprendi on twenty-three counts. Pursuant to a plea agreement, Apprendi pleaded guilty to firearm possession charges. As part of the plea agreement, the state reserved the right to request an enhanced sentence on the basis that Apprendi committed the offense with a biased purpose. Apprendi, correspondingly, reserved the right to challenge the "hate crime" sentence as a violation of the United States Constitution. The trial court determined by a preponderance of the evidence that the hate crime enhancement applied and rejected Apprendi's constitutional challenge. Both a state appellate court and the New Jersey Supreme Court affirmed the trial court's judgment. Id. at 469–474, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 17} The United States Supreme Court granted certiorari and considered this issue: "[W]hether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." Id. at 469, 120 S.Ct. 2348, 147 L.Ed.2d 435. The court concluded:

{¶ 18} "In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones* [*v. United States* (1999), 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: '[I]t is unconstitutional for a legislature to remove from the jury the· assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 19} In applying its holding to the New Jersey statutory scheme, the United States Supreme Court noted that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 20} The facts of this case are distinguishable from *Apprendi.* Here, defendant's conviction was based on a jury verdict, not a plea arrangement. Count 18 of the indictment included a major drug offender specification with a factual allegation that defendant possessed Oxycodone, a Schedule II controlled substance, in an amount that was at least one hundred times the amount necessary to commit a third degree felony. The jury's verdict found defendant guilty of aggravated possession of Oxycodone in an amount equal to or exceeding one hundred times the bulk amount as charged in the indictment. Unlike *Apprendi,* the jury, not the court, determined that defendant possessed a Schedule II controlled substance in an amount equal to or exceeding one hundred times the bulk amount beyond a reasonable doubt.

{¶ 21} As a result of the jury's factual conclusion, the defendant was by statutory definition a major drug offender under R.C. 2925.11(C)(1)(e), mandating the imposition of the maximum penalty for a first degree felony and triggering defendant's classification as a major drug offender. Defendant's classification as a major drug offender, in turn, vested the trial court with the discretion to impose an additional prison term upon specific findings concerning recidivism and the seriousness of his conduct. See R.C. 2925.11(C)(1)(e).

{¶ 22} Thus, the jury's verdict finding defendant guilty of Oxycodone possession in more than one hundred times bulk amount, not the trial court's determination, rendered defendant a major drug offender pursuant to the statutory scheme set forth in R.C. 2925.11(C)(1)(e). Moreover, the finding requisite to the imposition of the additional term of incarceration, that defendant was a major drug offender, did not expose defendant to a greater punishment than that statutorily

authorized by the jury's guilty verdict. See *State v. McCoy* (2001), Hamilton App. No. C–000659, 2001 WL 1386196. See, also, *Apprendi* at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435. Accordingly, under these facts, the trial court did not violate *Apprendi* by sentencing defendant to both the maximum sentence for a first degree felony and an additional sentence as a major drug offender.

{¶ 23} Defendant, however, also claims that Ohio's current major drug offender sentencing scheme is facially unconstitutional because, pursuant to R.C. 2941.1410, it leaves the determination of major drug offender status to the trial court, not the jury. As defendant properly notes, R.C. 2941.1410(B) is inconsistent with R.C. 2925.11(C)(1)(e). Under R.C. 2941.1410(B), "[t]he court shall determine the issue of whether an offender is a major drug offender." However, under R.C. 2925.11(C)(1)(e), if an offender possesses an amount of drugs that equals or exceeds one hundred times the bulk amount, the offender is statutorily specified to be a major drug offender.

{¶ 24} In *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, the Ohio Supreme Court instructed:

{¶ 25} "* * * R.C. 1.51 directs us to first construe conflicting statutory provisions, where possible, to give effect to both. Only where the conflict is deemed irreconcilable does R.C. 1.51 mandate that one provision shall prevail over the other. We have judicially recognized similar rules of statutory construction:

{¶ 26} " 'First, all statutes which relate to the same general subject matter must be read *in pari materia*. And, in reading such statutes *in pari materia*, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict." (Citations omitted.) Id., citing *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018.

{¶ 27} Here, R.C. 2941.1410, introduced by S.B. No. 107, passed on October 20, 1999, approved on December 22, 1999, and effective March 23, 2000, is the general provision regarding the specification of major drug offender status required in an indictment or information. On the other hand, R.C. 2925.11, introduced by H.B. No. 241, passed on January 19, 2000, approved on February 15, 2000, and effective May 17, 2000, is the specific provision concerning drug possession offenses. R.C. 2925.11 was passed and approved after the general

provision. The fact that R.C. 2925.11 is the more specific provision and the product of more recent legislation suggests that the legislature intended R.C. 2925.11 to control under the facts here. Accordingly, we overrule defendant's first assignment of error.

{¶ 28} In his second assignment of error, defendant contends that his trial counsel was ineffective because (1) during voir dire, trial counsel disclosed to potential jurors that defendant had a criminal record and would not testify at trial, and (2) trial counsel failed to raise objections concerning the alleged unconstitutionality of Ohio's major drug offender sentencing scheme.

{¶ 29} "In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-prong test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Initially, defendant must show that counsel's performance was deficient. To meet that requirement, defendant must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

{¶ 30} "Next, if defendant successfully proves that counsel's assistance was ineffective, the second prong of the *Strickland* test requires defendant to prove prejudice in order to prevail. To meet that prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. A defendant meets this standard with a showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (Citations omitted.) *State v. Sieng* (1999), Franklin App. No. 99AP–282, 1999 WL 1267318.

{¶ 31} Here, during voir dire, defendant's trial counsel inquired: "Now, Mr. Fleischer, could you conceive of the possibility that Mr. Elkins' decision not to take the stand would have absolutely nothing to do with the guilt or innocence of this case; but he may have a record that the jury may know about, and it may have nothing to do with this case, you know, there may be a number of things unrelated to the guilt or innocence as to why Mr. Elkins takes the stand, and it may be tactical and have nothing to do with the facts in this case why Mr. Elkins takes the stand. Do you see, can you see that?" (Tr. 89.)

{¶ 32} Trial counsel's remarks were made in the context of a discussion about the presumption of innocence and the privilege against self-incrimination. When viewed in context, trial counsel's remarks are not inappropriate. Moreover,

contrary to defendant's contention, trial counsel's remarks do not insinuate that defendant in fact had a criminal record. Trial counsel simply indicated that if defendant did not testify, many reasons could account for the decision, including the possibility that defendant may have had a criminal record.

{¶ 33} Defendant nonetheless contends that "[a] better tactic for trial counsel would have been to explore with the venire the emphasis they would have placed on Appellant's testimony at trial, coupled with the fact that he had a prior criminal record." (Defendant's brief, at 5.) Defendant's suggestion may have been a more effective approach to the issue. However, as the court in *Strickland* noted, "[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. * * * Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689–690, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 34} Based on the statement made in this particular case, trial counsel's alleged error, if any, is not so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. See id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because defendant fails to meet the first prong of the *Strickland* test, we do not reach the second prong of *Strickland.*

{¶ 35} In addition to trial counsel's allegedly improper comments during voir dire, defendant contends that trial counsel provided ineffective assistance because trial counsel failed to raise the unconstitutionality of Ohio's major drug offender sentencing scheme based on *Apprendi.* See, e.g., *Apprendi* at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

{¶ 36} Here, although trial counsel did not specifically assert the unconstitutionality of Ohio's major drug offender sentencing scheme, trial counsel indirectly raised the issue by objecting to the trial court's determining that defendant was a major drug offender. More particularly, during the sentencing hearing and in response to the trial court's inquiry, trial counsel noted, "I would point out to the court that before the verdicts were given to the jury, Mr. Elkins' position was that this [major drug offender] specification should be a jury finding, and so with that we do object to the court making this finding independently." (Tr. 624.) Moreover, because we have determined that the sentencing scheme is not unconstitutional as applied to the underlying drug offenses at issue, defendant's ineffective assistance of counsel argument premised on trial counsel's alleged failure to raise an *Apprendi* objection also is not well taken. Defendant's second assignment of error is overruled.

{¶ 37} In his third assignment of error, defendant contends that the trial court failed to make the required findings in imposing a major drug offender sentence on defendant.

{¶ 38} R.C. 2925.11(C)(1)(e) provides: "If the amount of the drug involved equals or exceeds one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." See, also, former R.C. 2929.01(X) (definition of "major drug offender"). Here, defendant was convicted of knowingly obtaining, possessing, or using Oxycodone, a Schedule II controlled substance, in an amount equal to or exceeding one hundred times the bulk amount, in violation of R.C. 2925.11. By operation of law, under R.C. 2925.11(C)(1)(e), defendant was a major drug offender.

{¶ 39} For purposes of sentencing a major drug offender, R.C. 2925.11(C)(1)(e) directs a court to R.C. 2929.14(D)(3)(b). At the applicable time, R.C. 2929.14(D)(3)(b) stated: "The court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed under division (D)(3)(a) of this section and, if applicable, divisions (D)(1) and (2) of this section, makes both of the findings set forth in divisions (D)(2)(b)(i) and (ii) of this section."

{¶ 40} Former R.C. 2929.14(D)(2)(b)(i) required a court to find that "[t]he terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism." Former R.C. 2929.14(D)(2)(b)(ii) required a court to find that "[t]he terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."

{¶ 41} At the sentencing hearing, the trial court made both requisite findings in determining that defendant was a major drug offender. Defendant, however, contests the factual underpinnings for the trial court's findings. In support of its finding that the prison terms imposed on defendant were demeaning to the seriousness of the offense, the trial court noted the following factors: (1) defendant's recruitment of his 21–year–old son to assist defendant in the commis-

sion of the crime, (2) defendant's attempt to inflict serious injury to police while fleeing the crime scene, and (3) the serious physical, psychological, and economic harm suffered by pharmacy owners as a result of the offense.

{¶ 42}   Defendant contends that the record contains no evidentiary basis to support the trial court's finding that defendant recruited his 21-year-old son to assist him in the commission of the crimes.   At trial, the trial court held defendant's son in contempt due to his general refusal to answer questions. Moreover, when defendant's son responded to questions, his testimony suggested that he was responsible for his involvement in the crimes for which he pled guilty. See Tr. 438 ("Q. Your dad got you into a lot of trouble, didn't he?   A.   I got myself in.   I told you I got nothing to say to you.   I will not keep answering these questions.").

{¶ 43}   With respect to the trial court's determining that defendant attempted to inflict serious injury on police officers while fleeing the crime scene, defendant contends that the trial court's finding does not comport with the statutory requirement of former R.C. 2929.12(B)(2) that a trial court consider whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense."   Although the trial court's finding indicates the possibility of serious injury to the police officers, it does not comport with the express language of former R.C. 2929.12(B)(2) that required the infliction of serious injury.   Former R.C. 2929.12(A) provided:

{¶ 44}   "Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct * * * and, in addition, *may consider any other factors that are relevant to achieving those purposes and principles of sentencing.*"   (Emphasis added.)

{¶ 45}   The record here contains sufficient evidence to support a finding that defendant attempted to inflict serious injury to police officers.   Moreover, the evidence is relevant in supporting the trial court's finding that prison terms imposed on defendant were demeaning to the seriousness of the offense;  former R.C. 2929.14(D)(2)(b)(ii) required the court to evaluate the seriousness of the crime under the factors of former R.C. 2929.12, not just former R.C. 2929.12(B)(2).   Defendant's argument concerning the trial court's failure to adhere only to the plain language of former R.C. 2929.12(B)(2) is not well taken.

{¶ 46}   Defendant also contends that the record contains no evidentiary basis for the trial court's finding that the pharmacy owners suffered serious physical,

psychological, and economic harm as a result of the offense. The record suggests that the pharmacy was unoccupied at the time of the breaking and entering, and no evidence in the record suggests that the pharmacy owner suffered psychological trauma due to the offense. However, evidence supports a finding of property damage to the pharmacy and loss of inventory: the pharmacy owner testified concerning the loss of inventory and a pharmacy employee testified concerning damage to the pharmacy, even though no evidence was presented concerning the financial effects or economic harm of the crimes on the pharmacy owner, such as lost revenue due to defendant's offenses, unreimbursed costs associated with defendant's offenses that may have not been covered by insurance, or any out-of-pocket expenses.

{¶ 47} As a result, the trial court had an evidentiary basis for some, but not all, of its finding in support of its determination that the prison terms imposed were demeaning to the seriousness of the offense. Because we cannot determine from the record to what extent the improperly considered matters may have influenced the length of the term the trial court imposed on defendant pursuant to the major drug offender determination, we sustain defendant's third assignment of error to the limited extent of allowing the trial court to resentence defendant on the enhanced sentence resulting from defendant's major drug offender status.

{¶ 48} In his fourth assignment of error, defendant contends that the trial court improperly sentenced him to consecutive sentences in violation of Ohio sentencing statutes. The state properly concedes that the trial court did not make requisite findings to impose consecutive sentences. Accordingly, we sustain defendant's fourth assignment of error.

{¶ 49} Defendant's fifth assignment of error contends that the trial court erred in sentencing him to terms of actual incarceration in excess of the minimum term in violation of former R.C. 2929.14(B). Because defendant had served previous prison terms, the requirement under former R.C. 2929.14(B) to impose the shortest prison term authorized for the offense does not apply. See *State v. Edmonson* (1999), 86 Ohio St.3d 324, 325, 715 N.E.2d 131 ("R.C. 2929.14[B] requires a trial court to impose a minimum sentence for *first-time imprisonment* unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender."). (Emphasis added.) Defendant's fifth assignment of error is overruled.

{¶ 50} Having overruled defendant's first, second, and fifth assignments of error, but having sustained defendant's third and fourth assignments of error to

the extent indicated, we affirm in part and reverse in part the trial court's judgment, and remand for resentencing only, consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded for resentencing.

KLATT and DESHLER, JJ., concur.