The STATE of Ohio, Appellee,

v.

CHANDLER, Appellant.

[Cite as *State v. Chandler,* 157 Ohio App.3d 672, 2004-Ohio-3436.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2003–CA–00342.

Decided June 28, 2004.

John D. Ferraro and Kathleen O. Tatarsky, Stark County Assistant Prosecuting Attorney, for appellee.

Fredrick M. Pitinii, for appellant.

GWIN, Presiding Judge.

{¶ 1} Defendant-appellant, Kenyan Chandler, appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of trafficking in cocaine, a felony of the first degree in violation of R.C. 2925.03(A)(1)(C)(4)(g). The indictment also contained a major-drug-offender specification pursuant to R.C. 2941.1410. Plaintiff appellee is the state of Ohio.

{¶ 2} In June 2003, the Stark County Metro Vice Unit and the Massillon Police Department were engaged in an undercover investigation of drug sales in the Massillon, Ohio area. Their target was Philip Bledsoe. The detectives were working with an undisclosed confidential informant and had made a number of controlled buys of narcotics through the informant from Bledsoe on previous occasions.

{¶ 3} On June 30, 2003, the confidential informant arranged a purchase of narcotics for the Massillon Police Department from Bledsoe. The transaction was arranged by telephone. The transaction was to take place the following day.

{¶ 4} On July 1, 2003, an undercover Massillon Police officer positioned himself in a white van that had been custom-remodeled to allow him to hide under the front seat. The van was also specially equipped with videotape and audiotape equipment to film and record any drug activities. The equipment recorded the events. A meeting had been arranged in front of the school across from Bledsoe's residence. Bledsoe arrived and entered the van with the confidential informant and hidden detective. He brought a package with him. There was no discussion about the contents of the package. Bledsoe requested the money and was told that it was in a different location. He exited the vehicle, and the van drove away.

{¶ 5} Bledsoe telephoned the confidential informant to determine where to bring the narcotics. It was agreed that the destination for delivery of the drugs would be the East Ohio Gas parking lot.

{¶ 6} Shortly after parking the van that was driven by the confidential informant, a white vehicle pulled into the parking lot. The driver was not Bledsoe as the officers had anticipated. Instead, the white vehicle was driven by the appellant, Kenyan Chandler. Surprised by this, the confidential informant called Bledsoe on the telephone and was told that appellant was Bledsoe's brother. The undercover officer testified and the videotape positioned in the van revealed that appellant drove into the parking lot, exited a white vehicle, and entered the van driven by the confidential informant.

{¶ 7} Appellant then pulled a brown paper bag out of the waistband of his pants and offered a scale to the confidential informant. The appellant stated "let's do this, let's do this." The confidential informant told Chandler that he had to get the $8,000 and that they would have to count the money. When the confidential informant got out of the van to obtain the $8,000 from another undercover police officer, the undercover officers of the takedown team moved in, arrested appellant, and confiscated the scales and the brown paper bag.

{¶ 8} In the brown paper bag was a wet, white substance that appeared to the undercover officer to be freshly made crack cocaine. Testing performed by the Stark County Crime Laboratory revealed that the substance was in fact baking soda. The scale confiscated from appellant contained traces of cocaine. When interviewed by a detective of the Massillon Police Department, appellant denied being at the scene of the drug bust. He told the officers that he was not anywhere near the location where this had taken place and that the officers had just taken him off the streets.

{¶ 9} On September 26, 2003, a jury trial took place wherein the appellant was found guilty of one count of trafficking in cocaine. The trial court deferred sentencing in this matter until September 30, 2003. On that date, the court sentenced appellant to a mandatory ten years on the trafficking in cocaine and an additional one year on the major-drug-offender specification for a total sentence of 11 years in prison.

{¶ 10} It is from the conviction and sentence that appellant filed this appeal.

{¶ 11} Appellant assigns four errors to the trial court:

{¶ 12} "The trial court erred in failing to dismiss the major drug offender specification where the facts of the case fail to meet the statutory requirements.

{¶ 13} "The trial court's finding of guilty is against the manifest weight and sufficiency of the evidence.

{¶ 14} "The major drug offender specification located in R.C. 2929.01 is void for vagueness and overbroad.

{¶ 15} "It was plain error for the trial court to fail to instruct the jury on the lesser offense of trafficking in counterfeit controlled substance and/or precluding the appellant from mentioning the offense of trafficking counterfeit controlled substance in all phases of the trial."

## I & II

{¶ 16} In his first assignment of error, appellant maintains that his sentence must be vacated because the statutorily required amount of controlled substance necessary to sentence appellant to a mandatory ten-year prison term and to subject him to an additional possibility of up to a ten-year prison term as a major drug offender is not present in this case. In his second assignment of error, appellant maintains that his conviction is against the manifest weight of the evidence because, among other reasons, the state failed to prove beyond a reasonable doubt that the package in question contained a controlled substance, and further because the amount of controlled substance was insufficient to trigger the major-drug-offender classification of R.C. 2925.03(C)(4)(g). We will address assignments of error one and two collectively.

{¶ 17} R.C. 2941.1410 states:

{¶ 18} "(A) Except as provided in sections 2925.03 and 2925.11 of the Revised Code, the determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form: 'SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender is a major drug offender).'

{¶ 19} "(B) The court shall determine the issue of whether an offender is a major drug offender.

{¶ 20} "(C) As used in this section, 'major drug offender' has the same meaning as in section 2929.01 of the Revised Code."

{¶ 21} Appellant's indictment contained such a specification. However, appellant was indicted pursuant to R.C. 2925.03(A) and (C)(4)(g).

{¶ 22} R.C. 2925.03(C) provides:

{¶ 23} "(C) Whoever violates division (A) of this section is guilty of one of the following:

{¶ 24} "* * *

{¶ 25} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

{¶ 26} "* * *

{¶ 27} "(g) If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code."

{¶ 28} Accordingly, the R.C. 2941.1410 "specification" is redundant and unnecessary when the individual is indicted pursuant to R.C. 2925.03(A) and (C)(4)(g). See *State v. Elkins,* 148 Ohio App.3d 370, 2002-Ohio-2914, 773 N.E.2d 593. However, this does not end the analysis in the case at bar. In order to determine the penalty for a violation of R.C. 2925.03(A) and an additional sentence as a major drug offender pursuant to R.C. 2925.03(C)(4)(g), the state is required to prove beyond a reasonable doubt at trial both the identity of the substance and the amount of the substance.

{¶ 29} R.C. 2925.03(A) provides: "No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance." The fact that the substance that was offered for sale was not actually a controlled substance is immaterial for purposes of conviction under R.C. 2925.03(A)(1). *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798; *State v. Patterson* (1982), 69 Ohio St.2d 445, 23 O.O.3d 394, 432 N.E.2d 802. However, in both *Scott* and *Patterson,* the court's analysis ended with R.C. 2925.03(A)(1). The court did not address the penalty provisions of R.C. 2925.03(C). R.C. 2925.03 links the penalty to the identity and weight of the drug. Accordingly, a sale or offer to sell a controlled substance is only one element of the offense. For the reasons that follow, we find that in order to sustain a conviction pursuant to R.C. 2925.03(A) and (C)(4)(g), the state is required to prove the identity of the controlled substance and a detectable amount of that substance.

{¶ 30} The Ohio Supreme Court reviewed the statutory scheme setting out drug offenses and determining penalties based upon the "bulk amount" in a case decided before the adoption of R.C. 2925.03(C)(4)(g) as applied in appellant's case. In *State v. Headley* (1983), 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716, the Ohio Supreme Court stated that "[u]nder this analysis, it is evident that R.C. 2925.03 sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved. As such, the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment. The omission of that information cannot be cured by amendment, as to do so would change the very identity of the offense charged." Id. at 479, 6 OBR 526, 453 N.E.2d 716. The controlled substance in this case was alleged to be crack cocaine.

{¶ 31} In *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, the defendant-petitioner was convicted of, inter alia, second-degree possession of a firearm, an offense carrying a maximum penalty of ten years under New Jersey law. Id. at 469–470, 120 S.Ct. 2348, 147 L.Ed.2d 435. On the prosecutor's motion, the sentencing judge found by a preponderance of the evidence that Apprendi's crime had been motivated by racial animus. That finding triggered application of New Jersey's "hate crime enhancement," which doubled Apprendi's maximum authorized sentence. The judge sentenced Apprendi to 12 years in prison, 2 years over the maximum that would have applied but for the enhancement.

{¶ 32} The court held that Apprendi's sentence violated his right to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Id., 530 U.S. at 477, 120 S.Ct. 2348, 147 L.Ed.2d 435, quoting *United States v. Gaudin* (1995), 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444. That right attached not only to Apprendi's weapons offense but also to the hate-crime aggravating circumstance. New Jersey, the court observed, "threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race." Id., 530 U.S. at 476, 120 S.Ct. 2348, 147 L.Ed.2d 435. Merely using the label " 'sentence enhancement' to describe the [second act] surely does not provide a principled basis for treating [the two acts] differently." Id.; see, also, *Ring v. Arizona* (2002), 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556.

{¶ 33} In appellant's case, the maximum sentence for a first-degree felony is ten years. R.C. 2929.14(A)(1). Application of the major drug offender classification as provided for in R.C. 2925.03(C)(4)(g) can increase the maximum sentence by as much as ten years. R.C. 2929.14(D)(3)(b). Appellant was sentenced to a term of ten years on the felony of the first degree and a sentence of one year on

the major-drug-offender classification. The ten-year sentence was made mandatory by R.C. 2925.03(C)(4)(g). Thus, appellant was sentenced to an aggregate of 11 years by the trial court. As the sentence exceeds the maximum sentence that can be imposed for a felony of the first degree, the statute's mandate that the trial court make the finding that the appellant is a major drug offender runs afoul of the holding in *Apprendi*, supra. The finding of the amount of controlled substance necessary to invoke the major-drug-offender classification would be an element that the state must prove beyond a reasonable doubt at trial under the *Apprendi* analysis and holding. *United States v. Doggett* (C.A.5, 2000), 230 F.3d 160. However, in the case at bar, the trial court submitted the issue of the amount of crack cocaine involved to the jury in a special verdict form. The verdict form provided: "WE, THE JURY, BEING DULY EMPANELLED AND SWORN, FURTHER FIND BEYOND A REASONABLE DOUBT THAT THE CRACK COCAINE INVOLVED IN THIS CASE WAS IN A QUANTITY (check only **one** that you find applies to this case)* * *." The form then set forth a series of ranges from one gram to or exceeding 100 grams of crack cocaine. Nowhere was the jury instructed on the language contained in R.C. 2925.03(C)(4)(g). Nor was the jury instructed on the definition of "crack cocaine." It is questionable whether this verdict form is sufficient to comply with the mandate of *Apprendi*. The question now becomes, what is the jury required to find with respect to the identity and amount of controlled substance pursuant to R.C. 2925.03(C)(4)(g)?

{¶ 34} As set forth above, R.C. 2925.03(C)(4) requires that the "substance" sold or offered for sale be a "compound, mixture, preparation, or substance containing cocaine." If the "drug" involved is "crack cocaine" equal to or exceeding 100 grams, then the accused is a major drug offender.

{¶ 35} R.C. 2929.01(X) defines a major drug offender as follows:

{¶ 36} " 'Major drug offender' means an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains at least one thousand grams of hashish; at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine; at least two thousand five hundred unit doses or two hundred fifty grams of heroin; at least five thousand unit doses of L.S.D. or five hundred grams of L.S.D. in a liquid concentrate, liquid extract, or liquid distillate form; or at least one hundred times the amount of any other schedule I or II controlled substance other than marihuana that is necessary to commit a felony of the third degree pursuant to section 2925.03, 2925.04, 2925.05, or 2925.11 of the Revised Code that is based on the possession of, sale of, or offer to sell the controlled substance."

{¶ 37} R.C. 2925.01 states:

{¶ 38} "(C) 'Drug,' 'dangerous drug,' 'licensed health professional authorized to prescribe drugs,' and 'prescription' have the same meanings as in section 4729.01 of the Revised Code." R.C. 4729.01 states:

{¶ 39} "(E) 'Drug' means:

{¶ 40} "(1) Any article recognized in the United States pharmacopoeia and national formulary, or any supplement to them, intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or animals;

{¶ 41} "(2) Any other article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or animals;

{¶ 42} "(3) Any article, other than food, intended to affect the structure or any function of the body of humans or animals;

{¶ 43} "(4) Any article intended for use as a component of any article specified in division (C)(1), (2), or (3) of this section; but does not include devices or their components, parts, or accessories."

{¶ 44} R.C. 2925.01(GG) states: "(GG) 'Crack cocaine' means a compound, mixture, preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use."

{¶ 45} R.C. 2925.01(X) provides:

{¶ 46} " 'Cocaine' means any of the following:

{¶ 47} "(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;

{¶ 48} "(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;

{¶ 49} "(3) A salt, compound, derivative, or preparation of a substance identified in division (X)(1) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine."

{¶ 50} The report from the Stark County Crime Laboratory admitted at trial in the case at bar unequivocally identifies the substance that forms the basis of the charge against appellant as baking soda, a noncontrolled substance. Accordingly, the "substance" in appellant's case does not fit the definition of "drug," "controlled substance," "cocaine," or "crack cocaine."

{¶ 51} R.C. 2925.01(O) states:

{¶ 52} "(O) 'Counterfeit controlled substance' means any of the following:

{¶ 53} "(1) Any drug that bears, or whose container or label bears, a trademark, trade name, or other identifying mark used without authorization of the owner of rights to that trademark, trade name, or identifying mark;

{¶ 54} "(2) Any unmarked or unlabeled substance that is represented to be a controlled substance manufactured, processed, packed, or distributed by a person other than the person that manufactured, processed, packed, or distributed it;

{¶ 55} "(3) Any substance that is represented to be a controlled substance but is not a controlled substance or is a different controlled substance;

{¶ 56} "(4) Any substance other than a controlled substance that a reasonable person would believe to be a controlled substance because of its similarity in shape, size, and color, or its markings, labeling, packaging, distribution, or the price for which it is sold or offered for sale."

{¶ 57} Clearly, the substance involved in appellant's case fits the definition of a "counterfeit controlled substance" found within R.C. 2925.01(O)(3) and/or (4). The officer at trial testified that he thought he was buying crack cocaine, that the substance resembled crack cocaine, and that the price paid was that which one would expect to pay for crack cocaine.

{¶ 58} R.C. 2925.37(B) defines the offense of knowingly selling or offering to sell a counterfeit controlled substance. This statute does not define the offense or the penalty in terms of either the identity of the "controlled substance" or the amount of the substance sold or offered for sale. In other words, it makes no difference in the degree of the offense or the penalty to be imposed if the sale or offer to sell involves one gram or one thousand grams. The crime is classified as either a fifth- or fourth-degree felony depending on the proximity of the transaction to a school or to a juvenile. R.C. 2925.37(H).

{¶ 59} In *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, the Ohio Supreme Court held: "The offenses of knowingly selling or offering to sell a controlled substance, as proscribed by R.C. 2925.03(A)(1), and knowingly selling or offering to sell a counterfeit controlled substance, in violation of R.C. 2925.37(B), are not allied offenses of similar import. (R.C. 2941.25, applied.)" Id. at syllabus. Accordingly, the jury was foreclosed from considering at trial that the more appropriate charge was an offer to sell a counterfeit controlled substance.

{¶ 60} As set forth above, R.C. 2929.01(X), which defines "major drug offender" requires that the "substance" sold or offered for sale be "any drug, compound, mixture, preparation, or substance that consists of or contains * * * at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine * * *." Further, as previously noted, R.C. 2925.03(C)(4)

requires that the "substance" sold or offered for sale be a "compound, mixture, preparation, or substance containing cocaine."

{¶ 61} The primary purpose of the judiciary in the interpretation or construction of a statute is to give effect to the intention of the legislature, as gathered from the provisions enacted by application of well-settled rules of construction or interpretation. *Henry v. Cent. Natl. Bank* (1968), 16 Ohio St.2d 16, 20, 45 O.O.2d 262, 242 N.E.2d 342, quoting *State ex rel. Shaker Hts. Pub. Library v. Main* (1948), 83 Ohio App. 415, 38 O.O. 464, 80 N.E.2d 261. It is a cardinal rule that a court must first look to the language itself to determine the legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. If that inquiry reveals that the statute conveys a meaning that is clear, unequivocal, and definite, at that point the interpretive effort is at an end, and the statute must be applied accordingly. Id. at 105–106, 65 O.O.2d 296, 304 N.E.2d 378. In determining legislative intent, it is the duty of the court to give effect to the words used, not to delete words used or to insert words not used. *Columbus–Suburban Coach Lines v. Public Utilities Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8. R.C. 1.42 states: "1.42 Common and technical usage. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶ 62} The term "least" is defined as "at the minimum." Merriam Webster's Collegiate Dictionary (10th Ed.1993), at 663. The term "consist" is defined as "to be composed or made up." Id. at 247. The term "contain" is defined as "to have within." Id. at 249. The definitions would be equally applicable to R.C. 2925.03(C)(4) and (C)(4)(g). As set forth above, the Revised Code also defines "drug," "cocaine," and "crack cocaine." The plain wording of the statutes involved requires that the "substance" have some detectable amount of a controlled substance included with the noncontrolled substance. Further support for this construction can be found in case law.

{¶ 63} In *Chapman v. United States* (1991), 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524, the court analyzed the federal counterpart to R.C. 2925.03, Section 841, Title 18, U.S.Code. The Supreme Court observed that since the terms "mixture" and "substance" were not defined in the statute and have no distinctive common-law meaning, they should be construed to have their ordinary meaning. Id. at 461–462, 111 S.Ct. 1919, 114 L.Ed.2d 524. Thus, the court found that "[a] 'mixture' is defined to include 'a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence.' Webster's Third New International Dictionary 1449 (1986). A 'mixture' may also

consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 Oxford English Dictionary 921 (2d ed.1989)." Id. at 462, 111 S.Ct. 1919, 114 L.Ed.2d 524. It should be noted that the federal statute explicitly requires a "detectable amount" of a controlled substance to give rise to criminal liability. See *United States v. Gori* (C.A.3, 2003), 324 F.3d 234, 238–239; *United States v. Berroa–Medrano* (C.A.3, 2002), 303 F.3d 277, 284–285.

{¶ 64} In *State v. Wolpe* (1984), 11 Ohio St.3d 50, 11 OBR 196, 463 N.E.2d 384, the defendant was charged with selling marihuana in an amount equal to or exceeding the bulk amount but less than three times the bulk amount in violation of R.C. 2905.03(A)(5). The defendant argued that the statute excluded certain parts of the plant from the definition of "marihuana," such as mature stalks, fiber produced from the stalks or oils, or cake made from the seeds. Id. at 51, 11 OBR 196, 463 N.E.2d 384. The appellant argued on appeal that if those parts of the plant were excluded from the definition by statute, then the parts cannot be counted in determining the amount of the controlled substance. If that were the case, the appellant would not have sold in excess of the bulk amount. Id. The Ohio Supreme Court stated: "R.C. 3719.01(Q) defines 'marihuana' as 'all parts of *any* plant of the genus cannabis, whether growing or not.' (Emphasis added.) The statutory definition excludes, generally, the mature stalks, sterilized seeds, and the by-products thereof. The obvious intent of the General Assembly in enacting the exclusion to the definition of 'marihuana' in R.C. 3719.01(Q) was to recognize that the mature stalks, sterilized seeds, and by-products thereof have either legitimate, lawful uses or no unlawful use and thus should not be deemed contraband. By structuring R.C. 3719.01(Q) as it did, we conclude that the General Assembly additionally intended that, in order for certain parts of the marihuana plant to be excluded from the statutory definition, those parts must already have been separated from the non-excluded portions of the plant. This is true because *all* parts of the marihuana plant, according to the first sentence of R.C. 3719.01(Q), are considered to be marihuana. This necessarily includes mature stalks and sterilized seeds. It follows that the exclusion described in the second sentence of R.C. 3719.01(Q) applies only where the substance is found to consist *solely* of mature stalks, sterilized seeds, or otherwise excluded material. As a consequence, the state has no burden to separate any statutorily excluded portions of the plant from the quantity of marihuana seized from appellant." Id. at 51–52, 11 OBR 196, 463 N.E.2d 384. In other words, if the substance contains a detectable amount of a controlled substance, then the noncontrolled parts of the compound, mixture, preparation or substance are to be included when determining the amount of controlled substance sold or offered for sale. *Chapman v. United States, supra.*

{¶ 65} In *State v. Brown* (1995), 107 Ohio App.3d 194, 668 N.E.2d 514, the defendant was convicted of selling cocaine in an amount equal to or exceeding bulk amount and possessing cocaine in an amount equal to or exceeding bulk amount. Id. at 196, 668 N.E.2d 514. On appeal, the appellant argued that the evidence was insufficient to convict him of the bulk amount because the substance that formed the bases of one of the counts contained less than one tenth of a gram of cocaine, the remaining substance being procaine, not a controlled substance. Id. at 202, 668 N.E.2d at 514. In rejecting this contention, the court of appeals noted: "In *State v. Neal* (June 29, 1990), Hancock App. No. 5–89–6, unreported, 1990 WL 88804, this court interpreted the definition of bulk amount and found that 'the content or purity of cocaine is immaterial so long as there is any amount of cocaine in the compound or substance.' In reviewing this issue, we reaffirm this definition as the statute clearly indicates that any amount of cocaine is sufficient." (Emphasis in original.) Id. at 202, 668 N.E.2d 514.

{¶ 66} A similar argument was rejected by the court in *State v. Miller* (July 29, 1993), 2d Dist. No. 13121, 1993 WL 294806. In *Miller* the court noted: "The appellant does not contest the fact that she sold 27.25 grams of a white substance that contained cocaine. The plain language of R.C. 2925.01(E)(1) does not require the state to prove that the substance sold or offered for sale was unadulterated contraband, only that it contained 'any amount of' contraband. See *State v. Barker* (Jan. 30, 1992), Montgomery App. No. 12732, unreported, at 3 [1992 WL 15159]; *State v. Combs* (Sept. 10, 1991), Montgomery App. No. 11949, unreported, at 4–5 [1991 WL 214208]." Id. at * 5.

{¶ 67} A similar result was reached in *State v. Combs* (Sept. 10, 1991), 2d Dist. No. 11949, 1991 WL 214208. In *Combs* the court reviewed the statutes defining possession of a controlled substance and "bulk amount" and concluded: "In construing these statutory provisions, we note that the plain and ordinary meaning of the language in R.C. 2925.03(A)(6) read in pari materia with the definition of 'bulk amount' contained in R.C. 2925.01(E)(1) requires that any amount of cocaine is sufficient to subject a defendant to criminal liability under R.C. 2925.03(A)(6) when found in a compound, mixture, preparation or substance that satisfies the required statutory weight or dosage. Hence, the concentration of cocaine is not dispositive. Rather, it is the mere presence of cocaine in combination with a mixture, compound, preparation or substance that is controlling. It is not the province of the court to revise plain legislative enactments." (Emphasis sic.) Id. at * 2.

{¶ 68} Finally, in *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, the defendant was convicted of aggravated possession of cathinone, a controlled substance. On appeal, the defendant argued that he did not possess cathinone in an amount equal to or exceeding 100 times the bulk amount because

he possessed the khat plant, which contained cathinone, and that "plant material" does not fall within the statutory definition "compound, mixture, preparation, or substance." Id. at ¶ 75. The court of appeals, in rejecting this argument, accepted the trial court's reasoning: " 'From a review of the foregoing statutes, it is clear that the legislature intended to prohibit the possession of any amount of a controlled substance, whether the substance occurs in its purest state or when mixed with or contained in another form. While vegetation may not readily fall within the definition of the words compound, mixture or preparation, vegetation does fall within the common definition of substance. Substance is defined in the Oxford Dictionary as follows: 'substance/n. 1a. the essential material * * *.' Here the 'essential material' is the vegetation containing cathinone. Therefore, the entire amount is included to determine the quantity involved and the penalty to be imposed.' (Jan. 29, 2002 decision, at 11–13; footnotes omitted.)" Id. at ¶ 77.

{¶ 69} In the case at bar, the "substance" that appellant sold or offered to sell did not contain any detectible amount of a controlled substance. The plain wording of the statutes involved forecloses a finding by the jury that the amount of crack cocaine involved equaled or exceeded 100 grams so as to sentence appellant pursuant to R.C. 2925.03(C)(4)(g). The trial court erred in submitting the issue of the amount of drug involved to the jury because it was clear beyond a reasonable doubt that the substance did not contain a detectable amount of any controlled substance. As the state failed to prove an essential element of the criminal offense, appellant's conviction must be reversed. *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

{¶ 70} Appellant's first and second assignments of error are sustained.

### III

{¶ 71} In his third assignment of error, appellant challenges the constitutionality of the major-drug-offender specification.

{¶ 72} This argument was not presented at the trial court level. "The general rule is that 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' *State v. Childs* (1968), 14 Ohio St.2d 56 [43 O.O.2d 119], 236 N.E.2d 545, paragraph three of the syllabus; *State v. Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215], 166 N.E.2d 379, paragraph one of the syllabus; *State v. Lancaster* (1971), 25 Ohio St.2d 83 [54 O.O.2d 222], 267 N.E.2d 291, paragraph one of the syllabus; *State v. Williams* (1977), 51 Ohio St.2d 112, 117 [5 O.O.3d 98], 364 N.E.2d 1364. Likewise, '[c]onstitutional rights may be lost

as finally as any others by a failure to assert them at the proper time.' *State v. Childs,* supra, 14 Ohio St.2d at 62 [43 O.O.2d 119], 236 N.E.2d 545, citing *State v. Davis* (1964), 1 Ohio St.2d 28 [30 O.O.2d 16], 203 N.E.2d 357; *State, ex rel. Specht, v. Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182 [20 O.O.3d 191], 420 N.E.2d 1004, citing *Clarington v. Althar* (1930), 122 Ohio St. 608, 174 N.E. 251, and *Toledo v. Gfell* (1958), 107 Ohio App. 93, 95 [7 O.O.2d 437], 156 N.E.2d 752. [Footnote omitted.] Accordingly, the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. See *State v. Woodards* (1966), 6 Ohio St.2d 14 [35 O.O.2d 8], 215 N.E.2d 568. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute unconstitutionally vague. Both claims were apparent but yet not made at the trial court level." *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.

{¶ 73} Accordingly, appellant's third assignment of error is overruled.

## IV

{¶ 74} In his fourth assignment of error, appellant contends that it was plain error for the trial court to refuse to instruct the jury on the crime of counterfeit controlled substance, and further, for the trial court not to allow appellant to mention that crime during the trial.

{¶ 75} In *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, the Ohio Supreme Court held: "The offenses of knowingly selling or offering to sell a controlled substance, as proscribed by R.C. 2925.03(A)(1), and knowingly selling or offering to sell a counterfeit controlled substance, in violation of R.C. 2925.37(B), are not allied offenses of similar import. (R.C. 2941.25, applied.)" Id. at syllabus. Accordingly, the trial court did not err in failing to instruct the jury in the case at bar. *State v. Oman* (Feb. 14, 2000), 5th Dist. No. 1999CA00027, 2000 WL 222190. Further, as this court noted in *Oman,* supra: "Appellant claims the trial court erred in not permitting his trial counsel to argue during closing argument that appellant was actually guilty of trafficking in a counterfeit controlled substance. We disagree. As stated in Assignment of Error IV, the trial court was not required to give the charge of the lesser included offense of trafficking in a counterfeit controlled substance therefore, to permit such an argument would have been fruitless and confusing to the jury." Id. at * 5.

{¶ 76} Accordingly, appellant's fourth assignment of error is overruled.

{¶ 77} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby reversed. Appellant's mandatory ten-year sentence and one-year sentence on the major-drug-offender

classification are vacated. The case is remanded to the Stark County Court of Common Pleas for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

BOGGINS, J., concurs.

EDWARDS, J., concurs in part and dissents in part.

EDWARDS, Judge, concurring in part and dissenting in part.

{¶ 78} I concur with the majority as to Assignments of Error III and IV. However, as to Assignments of Error I and II, I respectfully dissent.

{¶ 79} The Ohio Supreme Court has held that the fact that the substance offered for sale was not actually a controlled substance is immaterial for purposes of a conviction under R.C. 2925.03(A)(1). *State v. Scott,* supra; *State v. Patterson;* and *State v. Mughni,* supra. The majority seeks to distinguish *Scott* and *Patterson* on the basis that both were decided prior to the amendment of R.C. 2925.03(A) to include R.C. 2925.03(C). R.C. 2925.03(C) links the penalty to the weight of the drug involved. After implicitly finding that *Scott* and *Patterson* are no longer good law, the majority concludes that an R.C. 2925.03 conviction requires that the offender offer to sell a substance that actually contains a controlled substance. I disagree.

{¶ 80} I would find *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, controlling. In *Mughni,* the defendant offered to sell Percodan although the substance he offered to sell was not in fact a controlled substance. The *Mughni* court looked at a previous version of R.C. 2925.03, which stated as follows:

{¶ 81} "(A) No person shall knowingly do any of the following:

{¶ 82} "(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount as defined in section 2925.01 of the Revised Code."

{¶ 83} The Ohio Supreme Court specifically considered whether Mughni could be convicted, since the substance offered for sale was not actually a controlled substance. The Supreme Court found that the fact that the substance Mughni was offering was not actually a controlled substance was immaterial for the purposes of R.C. 2925.03(A)(1). *Mughni,* 33 Ohio St.3d at 66, 514 N.E.2d 870, fn. 1. The offense was complete when the offender knowingly offered to sell a controlled substance. Id. at 67–68, 514 N.E.2d 870. There is no need for proof that the offender knew that the substance was not a controlled substance or that it was a counterfeit controlled substance. Id. at 68, 514 N.E.2d 870.

{¶ 84} I note further that *Mughni* was decided after the enactment of R.C. 2925.37, Offenses Involving Counterfeit Controlled Substances. Mughni was indicted on both drug trafficking and selling or offering to sell a counterfeit controlled substance. The Ohio Supreme Court held that they were not allied offenses of similar import and thereby upheld Mughni's conviction on both counts.

{¶ 85} I realize that R.C. 2925.03 has been amended since *Mughni.* However, I find no changes to the statute that render *Mughni* no longer controlling. Under the current version of R.C. 2925.03, the amount of drug involved determines the penalty: "If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined generally by" the drug involved and the amount involved. R.C. 2925.03(C).[1] Under the prior version of the statute, the amount of the controlled substance offered for sale determined the penalty as well. I see no material difference.

{¶ 86} Accordingly, I would affirm appellant's conviction pursuant to R.C. 2925.03(A)(1)(C)(4)(g) (Assignment of Error II). As a result, I would find that Assignment of Error I is moot for the following reasons.

{¶ 87} R.C. 2925.03(A)(1)(C)(4)(g) states that an offender convicted under this section is a major drug offender and that the offender shall be sentenced as a major drug offender. As such, there is no need to consider whether it was appropriate to find appellant a major drug offender pursuant to the major-drug-offender specification brought under R.C. 2941.1410 and 2929.01. R.C. 2941.1410 recognizes this fact when it states that a major-drug-offender specification is required in order to find an offender a major-drug-offender *except as provided in R.C. 2925.03.* Thus, even if appellant could not be found a major drug offender pursuant to R.C. 2941.1410 and 2929.01, appellant is a major drug offender pursuant to 2925.03(A)(1)(C)(4)(g).

{¶ 88} Accordingly, I respectfully dissent in regard to Assignment of Error I and II and concur with Assignments of Error III and IV.

---

1. The penalty is also affected if the offenses are committed in the vicinity of a school or a juvenile.