{110} Although I agree with the majority's resolution of Appellant's first, third, and much of his fourth assignments of error, I respectfully dissent from the remainder of its opinion.
{111} First, I cannot agree with the majority's resolution of Appellant's second assignment of error. The majority concludes that aggravated robbery and receiving stolen property are allied offenses of similar import because one cannot, as a factual matter, receive something that one has stolen. But this conclusion ignores the test the Ohio Supreme Court has formulated to determine whether two offenses are allied offenses of similar import. I agree with the general proposition that one cannot receive something one has stolen. But this affects whether one of Appellant's convictions is against the manifest weight of the evidence, an argument Appellant has not advanced, rather than whether the offenses are allied offenses of similar import. Appellant's second assignment of error is meritless.
{112} Second, I cannot agree with the majority's discussion in Appellant's fourth assignment of error regarding whether the trial court properly imposed maximum sentences upon him because the trial court's comments demonstrated a blatant disregard for the purposes and principles of Ohio's felony sentencing laws. Further, the majority fails to address the second part of this assignment of error, that dealing with whether the trial court properly imposed consecutive sentences. In this case, the trial court gave proper findings in support of its decision to order that Appellant's sentences be run consecutively. But its reasons in support of those findings run afoul of the purposes and principles of Ohio's felony sentencing laws. Appellant's fourth assignment of error in this regard is meritorious.
{113} Third, I disagree entirely with the majority's resolution of Appellant's fifth assignment of error. Appellant has not waived his argument under Blakely v. Washington (2004), ___ U.S. ___, 159 L.Ed.2d 403,124 S.Ct. 2531. And Appellant's sentence does violate the Sixth Amendment
as interpreted by Blakely.
 {114} Finally, I disagree with the majority's decision to modify Appellant's sentence rather than remanding the matter for resentencing. Although we have the power to modify a sentence, we should be circumspect when using that power. The trial court both by tradition and by statute is primarily responsible for imposing a sentence upon an offender. In this case, the trial court's decision was erroneous because it failed to make the necessary findings and give reasons for those findings. We should give it an opportunity to correct its mistake and ensure that Appellant receives a proper sentence rather than giving him the least possible punishment wherever we find error in the sentence imposed by the trial court.
 Allied Offenses of Similar Import {115} The majority concludes that the offenses of receiving stolen property and aggravated robbery are allied offenses of similar import. But in doing so, the majority fails to cite to or apply the Ohio Supreme Court's most recent decision setting forth the standard we must apply when analyzing this issue, State v. Rance, 85 Ohio St.3d 632,1999-Ohio-0291.
{116} In Rance, the court held that crimes are allied offenses of similar import only if the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Id. at 636. When making this judgment, the court should not consider the particular facts of the case, but should only consider the statutory elements in the abstract. Id. at paragraph one of the syllabus. "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. at 636. But if the elements do correspond, then the court must review the defendant's conduct to determine if the offenses were committed separately or with a separate animus as to each offense.State v. Jones, 78 Ohio St.3d 12, 14, 1997-Ohio-0038. If they were, then the defendant can be convicted of both the offenses. Id.
{117} "The linchpin of the Rance test is the observation that the General Assembly may prescribe cumulative punishments for specific offenses that would have constituted the same offenses under Blockburgerv. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The court concluded that R.C. 2941.25, the general codification of the test for allied offenses of similar import, `"is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses."' Id. at 635-636, 710 N.E.2d at 703, quoting State v. Bickerstaff (1984), 10 Ohio St.3d 62, 66, 10 OBR 352,356, 461 N.E.2d 892, 896, fn. 1." State v. Norman (1999),137 Ohio App.3d 184, 203 (Gorman, J., concurring).
{118} The cases the majority relies upon most, Maumee v. Geiger
(1976), 45 Ohio St.2d 238, and State v. Botta (1971), 27 Ohio St.2d 196, were both decided prior to Rance. And the only case it cites since 1999 is that of another appellate district which inexplicably fails to cite toRance. Both the majority and those cases look at the particular facts of this case to see if the two offenses are allied offenses of similar import. That analysis is no longer the analysis the Ohio Supreme Court uses.
{119} Appellant was convicted of aggravated robbery under R.C. 2911.01(A)(2) and receiving stolen property. Aggravated robbery is defined as having a dangerous ordnance on or about the offender's person or under the offender's control when attempting or committing a theft offense or fleeing immediately after the attempt or offense. Receiving stolen property is defined as receiving, retaining, or disposing of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. R.C. 2915.51(A).
{120} The statutory elements of aggravated robbery and receiving stolen property demonstrate that they are not allied offenses of similar import. For instance, someone could commit aggravated robbery when attempting a theft offense, even if the offender does not actually succeed at the theft offense. Therefore, the offender would not have actually stolen anything and could not be guilty of receiving stolen property even though they are guilty of aggravated robbery. Similarly, an offender could commit theft, as defined by R.C. 2913.02(A), without committing aggravated robbery. In such a case, the offender could be guilty of receiving stolen property, but not guilty of aggravated robbery. This, when looking solely at the statutory elements, a defendant could commit either one of the offenses without committing the other. Pursuant toRance, these two offenses cannot be allied offenses of similar import.
{121} As the majority points out, a criminal defendant should not serve a sentence for both stealing property and receiving that same property. But the reason is not because the offender is guilty of two offenses which are allied offenses of similar import. Instead, a conviction for both of these offenses is against the manifest weight of the evidence, which appellant did not raise and thus waived. We should not create an exception to the Ohio Supreme Court's decision in Rance when there is an alternative means of correcting the injustice the majority recognizes in its opinion. Appellant's arguments in this regard are meritless.
 Sentencing {122} Appellant contends that the trial court improperly sentenced him to both maximum and consecutive sentences. The majority addresses the trial court's decision sentencing Appellant to maximum sentences. But the majority fails to criticize the trial court's blatant disregard for the purposes and principles of Ohio's felony sentencing laws. It also fails to address whether the trial court properly imposed consecutive sentences. In this case, the trial court made the necessary findings to sentence Appellant to consecutive sentences, but the reasons the trial court gave for imposing maximum and consecutive sentences violate the principles and purposes of felony sentencing.
 Maximum Sentences {123} The trial court's decision to impose maximum sentences is contrary to law. In this case, the trial court's comments at the sentencing hearing indicate that it has a policy of sentencing anyone who has committed a particular type of offense to the maximum prison term for that offense. At that hearing, the trial court made the following comments:
{124} "The sentence shall be commensurate with, and not demeaning to, the seriousness of the offender's conduct and its impact on the victim. It must be consistent with sentences for similar crimes by similar offenders.
{125} "People who burglarize other homes spend ten years in jail if you have the misfortune of appearing before this Court on a burglary. People who try to kill other people get ten years in jail. People who commit aggravated robberies of other people get ten years in jail and so forth. So I intend to impose a sentence that is consistent with sentences for similar crimes by similar offenders."
{126} These statements clearly and convincingly demonstrate a blatant disregard for the purposes and principles of Ohio's felony sentencing laws. I cannot state strongly enough that the mere fact that someone commits an offense is not a reason to give that person the maximum possible prison term for that offense. The elements of the offense, without the aggravating factors listed in R.C. 2929.12(B), do not constitute the worst form of the offense. In addition, the goal of felony sentencing is to have consistent sentences statewide, not merely among the sentences handed out by a particular trial court. The trial court ignored the mandates of Ohio's felony sentencing statutes. Its decision to impose maximum sentences for each offense in this case is contrary to law.
 Consecutive Sentences {127} A trial court may only sentence an offender to consecutive sentences for felony offenses under certain circumstances pursuant to R.C. 2929.14(E). In this case, the only subsection which would apply would be R.C. 2929.14(E)(4) which states:
{128} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
{129} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
{130} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
{131} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).
{132} When the trial court makes findings in accordance with R.C. 2929.14(E)(4), it must state its reasons on the record. R.C. 2929.19(B)(2)(c). Failure to make the necessary findings on the record or to sufficiently state the reasons for that finding on the record constitutes reversible error. State v. Gary (2001), 141 Ohio App.3d 194,196.
{133} At the sentencing hearing, the trial court found as follows:
{134} "Consecutive prison terms are an option under 2929.14(E)(3) [sic] if necessary to protect the public and punish the offender and not disproportionate to the conduct and the danger the offender poses and the Court finds that the harm is so great or unusual that a single term does not adequately reflect seriousness of the conduct. The Court does so find."
{135} This finding clearly complies with R.C. 2929.14(E)(4). And the trial court's comments about the seriousness of the offense and the outrageous nature of the crimes are sufficient reasons to give consecutive sentences under R.C. 2929.19(B)(2)(c). But the mere fact that consecutive sentences are warranted to some extent does not mean the trial court is obligated to order that each of the sentences be served consecutively. The consecutive sentences imposed upon the offender should only be that which "is necessary to protect the public from future crime or to punish the offender" so the total term of imprisonment is "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(E)(4). The trial court's own statements demonstrate that the sentence imposed upon Appellant in this case violates those principles.
{136} The trial court specifically stated that it intended to give the defendants "at least one year in jail for every year of the life of the man who you tried to kill. * * * It is the intention of this Court thatyou should not be released from the penitentiary and the State of Ohioduring your natural lives. (Emphasis added.) I believe from what was represented to the court in the trial that but for the grace of the good lord above, Mr. Sovak would have died, and but for the grace of god that his family was able to find him and save him, he would have died and you would be here on charges of aggravated murder. That's what you tried to do. That's what you wanted to do." The trial court ignores the fact that the legislature has prevented it from giving a life sentence for attempted aggravated murder.
{137} Someone has attempted to commit aggravated murder when he engages "in conduct that, if successful, would constitute or result in" aggravated murder. R.C. 2923.02(A). If it had chosen to do so, the legislature could have granted courts the ability to impose a life sentence upon an offender who does everything he can to murder a man when, "but for the grace of god," the man does not die. Instead, it only allows trial courts to impose life sentences upon offenders who have actually committed either murder, aggravated murder, or rape of a person younger than thirteen. See R.C. 2929.02(A), (B); R.C. 2907.02(B). It has mandated that the maximum possible sentence for attempted aggravated murder is ten years imprisonment. R.C. 2923.02(E); R.C. 2929.14(A)(1). Accordingly, if Appellant and Goins had beaten Mr. Sovak just as savagely in the middle of the street rather than in his house and had not robbed him, the trial court could only impose a ten-year term of imprisonment for essentially the same conduct it uses as the basis for the "life" sentence.
{138} The fact that Appellant and Goins broke into Mr. Sovak's home, savagely beat him, robbed him, and locked him in a fruit cellar cannot be easily dismissed and may be a basis for making some of Appellant's sentences consecutive. But the prison term imposed by the trial court, eighty-five and one-half years, was an attempt by the trial court to override the legislature's intent by imposing a life sentence upon Appellant when one is not authorized by law. Appellant's sentence to a term of eighty-five and one-half years is clearly excessive.
{139} Trial courts cannot rotely incant some of the language contained in the felony sentencing statutes and expect to be affirmed on appeal. They must follow the mandates of those statutes and consider the principles and purposes of those statutes when imposing sentences upon felony offenders. This case is a prime example of what happens when a trial court fails to do so. Appellant has clearly and convincingly proven that his sentence is contrary to law and his fourth assignment of error is meritorious.
 Blakely v. Washington {140} In its resolution of Appellant's fifth assignment of error, the majority concludes that Appellant waived any argument relating to the United States Supreme Court's recent decision in Blakely v. Washington
(2004), ___ U.S. ___, 159 L.Ed.2d 403, 124 S.Ct. 253. It further determines that Blakely does not apply to Ohio's felony sentencing law. Both conclusions are incorrect.
{141} First, the majority ignores the fact that courts across the country have recognized that Blakely has "worked a sea change in the body of sentencing law." United States v. Ameline (9th Cir. 2004), 376 F.3d 967,973. This is because Blakely did more than merely apply the Court's prior decision in Apprendi v. New Jersey (2000), 530 U.S. 466. Rather, it defined what is the "statutory maximum" for Apprendi purposes. This was a novel application of the rule of law stated in Apprendi and criminal defendants should be allowed to assert arguments based on novel appellate decisions affecting their fundamental rights.
{142} The majority's failure to recognize the novelty of the Court's decision leads to its incorrect application of that decision to Ohio's felony sentencing law. Under Blakely, the "statutory maximum" forApprendi-purposes is no longer the maximum that an offender could be sentenced for an offense. Rather, it is the maximum that an offender can be sentenced for that offense based on the facts reflected in the jury verdict or admitted by the defendant. Ohio's felony sentencing statutes require that a trial court make specific factual findings before it can sentence an offender to more than the minimum sentence for each offense. These findings are not reflected in the jury's verdict. Accordingly, Appellant's sentence violates his Sixth Amendment right to a trial by jury.
 Background {143} In order to explain why Appellant has not waived his Blakely
argument and Blakely's impact on Ohio's felony sentencing structure, that decision must first be put in context. Succinctly, Blakely applied the previous decision in Apprendi and held that a trial court cannot use any fact, other than the fact of a prior conviction, to sentence an offender to more than the statutory maximum unless that fact was found beyond a reasonable doubt by a jury. This, in itself, is not earth-shattering. Ohio's appellate courts have been distinguishing Ohio's felony sentencing structure from the one Apprendi declared unconstitutional since Apprendi
was decided. But Blakely said that the statutory maximum is not the maximum possible sentence an offender could receive for an offense. Rather, it is the maximum possible sentence an offender could receivewithout considering additional facts. Thus, the Court's decision inBlakely affects Ohio's sentencing structure in a way that Apprendi alone did not.
{144} In Apprendi, the Court was asked whether a New Jersey statute which enhanced a second degree felony to a first degree felony "if the trial judge finds, by a preponderance of the evidence, that `the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity'" was constitutional. Id., 530 U.S. at 469, quoting N.J.Stat.Ann. 2C:44-3(e). It concluded that it was not. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. The Court held that it does not matter whether the finding is labeled as an element of the offense or a sentencing factor. Id. at 494. "[T]he relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater degree of punishment than that authorized by the jury's guilty verdict?" Id.
{145} After Apprendi, many of Ohio's appellate courts were asked to declare that Ohio's felony sentencing statutes were likewise unconstitutional because they require that trial judges, rather than juries, make the findings necessary to sentence an offender to either 1) more than the minimum sentence under R.C. 2929.14(B), 2) the maximum possible sentence under R.C. 2929.14(C), 3) or consecutive sentences under R.C. 2929.14(E)(4). See State v. Wilson, 6th Dist. No. L-01-1196, 2002-Ohio-5920; State v. Seese, 9th Dist. Nos. 01CA007852, 01CA007889, 2002-Ohio-1998; State v. Brown, 2d Dist. No. 18643, 2002-Ohio-0277; Statev. Neal (Aug. 13, 2001), 5th Dist. No. 2001CA00067. Other Ohio appellate courts, including this court, were asked to apply Apprendi to other situations as well. See State v. Loyed, 8th Dist. No. 83075,2004-Ohio-3961; State v. Chandler, 5th Dist. No. 2003-CA-00342,2004-Ohio-3436; State v. Stanley, 8th Dist. No. 81628, 2003-Ohio-3224;State v. Wright, 7th Dist. No. 01 CA 80, 2002-Ohio-6096; State v. McCoy
(Nov. 9, 2001), 1st Dist. Nos. C-000659, C-000660. In each of these cases, the appellate court distinguished Apprendi and held that Ohio's felony sentencing statutes were not constitutionally defective.
{146} We must revisit those decisions in light of the Court's decision in Blakely because it answers a question unanswered in Apprendi: what is the relevant statutory maximum for Apprendi-purposes? It further clarified what the Court means when distinguishing between "elements" and "sentencing factors."
{147} In Blakely, the defendant pled guilty to kidnapping his estranged wife with a firearm, a second-degree felony. The maximum possible prison term for this offense was ten years. But Washington's Sentencing Reform Act specified a "standard range" for sentencing an offender for second-degree kidnapping with a firearm of 49 to 53 months. A trial court could impose a sentence above the standard range if it finds "substantial and compelling reasons justifying an exceptional sentence." Id.,124 S.Ct. at 2535, quoting Wash. Rev. Code Ann. 9.94A.120(2). The statute then gave a non-exhaustive list of aggravating factors which could justify such a departure. Id., citing Wash. Rev. Code Ann. 9.94A.390.
{148} Pursuant to the plea agreement, the State recommended a sentence within the standard range. But the trial court rejected the State's recommendation and imposed a 90 month sentence after finding that the defendant acted with "deliberate cruelty" when committing the offense. "Deliberate cruelty" was one of the specifically listed statutory grounds for departing upward from the standard range. The defendant objected and, on appeal, argued that the trial court's upward departure denied him the right to a trial by jury. The Court applied Apprendi's holding and agreed that the trial court denied the defendant his right to a jury trial.
{149} The Court noted that under Apprendi, a trial court cannot increase a 10year sentence to a 20-year sentence because the judge found the crime was a hatecrime, one committed "`with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" Id. at 468-469, quoting N.J.Stat.Ann.2C:44-3(e). Likewise, a trial court may not impose the death penalty rather than a term of imprisonment because the judge found one of ten aggravating factors. Ring v. Arizona (2002), 536 U.S. 584, 592-593. "In each case, we concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." Blakely, 124 S.Ct. at 2537.
{150} "In this case, petitioner was sentenced to more than three years above the 53-month statutory maximum of the standard range because he had acted with `deliberate cruelty.' The facts supporting that finding were neither admitted by petitioner nor found by a jury. The State nevertheless contends that there was no Apprendi violation because the relevant `statutory maximum' is not 53 months, but the 10-year maximum for class B felonies in 9A.20.021(1)(b). It observes that no exceptional sentence may exceed that limit. * * * Our precedent makes clear, however, that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the factsreflected in the jury verdict or admitted by the defendant. * * * In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not follow, the jury has not found all the facts `which the law makes essential to the punishment' * * * and the judge exceeds his proper authority" (Citations omitted) (Emphasis sic.) Id.
{151} Because the judge in Blakely increased the defendant's sentence due to his "deliberate cruelty" when committing the offense, a fact neither found by the jury nor admitted by the defendant, his sentence was invalid. Id., 124 S.Ct. at 2538. "The Framers would not have thought it too much to demand that, before depriving a man of three more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to `the unanimous suffrage of twelve of his equals and neighbors,' * * * rather than a lone employee of the State." Id., 124 S.Ct. at 2543, quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769).
 Waiver {152} The majority concludes that Appellant waived any argument relating to Blakely because "Blakely dealt with well-established, rather than novel, constitutional rights." Opinion at ¶ 105. It believes that Appellant's Blakely argument "is essentially the same argument raised inApprendi." Id. Thus, it believes that Appellant should have made anApprendi argument to the trial court in order to make a Blakely argument to this court. This is incorrect.
{153} First, courts from around the country have recognized that a criminal defendant whose appeal was pending at the time Blakely was decided does not waive his Blakely-related arguments simply because he did not make those same arguments to the trial court. See Ameline; Peoplev. George (2004), 122 Cal.App.4th 419; People v. Ackerman (Nov. 18, 2004), Cal. 6th App.Dist. No. H026899; State v. Resendis-Felix (Nov. 10, 2004), Ariz. Ct. of App. No. 2-CA-CR 2003-0114-PR; Strong v. State (Nov. 5, 2004), Ind. 2nd App.Dist. No. 49A02-0401-CR-25; State v. Fairbanks
(Nov. 2, 2004), Minn. App. No. A04-983; State v. Benson (October 8, 2004), Tenn App. No. M2003-2127-CCA-R3-CD. At least one Ohio court has decided that it must address the issue even though the defendant did not raise the issue in the trial court. State v. Berry, 12th Dist. No. CA2003-02-053, 2004-Ohio-6027; see also State v. Otheberg, 8th Dist. No. 83342, 2004-Ohio-6103 (recognizing that Blakely creates cognizable issues in cases pending on direct appeal).
{154} The court in Strong ably described the situation as follows:
{155} "Our examination of [Apprendi, Ring, and Blakely] reveals that the `statutory maximum' as used by the United States Supreme Court in its 2000 Apprendi decision is different from that redefined in the 2004Blakely decision. Indeed, in Apprendi, the statutory maximum was the ten-year prescribed statutory maximum, which a defendant could receive for a second-degree offense if the preponderance of certain aggravating and mitigating circumstances, as found by the trial court, weighed in favor of the higher term. By contrast, in Blakely, the `statutory maximum' is the maximum sentence that a trial judge may impose without any additional findings, i.e., the presumptive or standard sentence. Because Blakely redefined the `statutory maximum' for purposes ofApprendi, a defendant, such as Strong, who challenges his enhanced sentence but fails to do so on the grounds of Apprendi has not waived his argument pursuant to Blakely. Accordingly, we find no waiver." Id. at 12-13.
{156} Second, Ohio's appellate courts routinely dismissed arguments similar to the ones now advanced under Blakely when those arguments were based solely on Apprendi. See State v. Elkins, 148 Ohio App.3d 370,2002-Ohio-2914; State v. Graber, 5th Dist. No. 2003CA00110, 2003-Ohio-5364;State v. Huntley, 4th Dist. No. 02CA15, 2002-Ohio-6806; State v. Wilson,
6th Dist. No. L-01-1196, 2002-Ohio-5920; State v. Gates, 8th Dist. No. 78120, 2002-Ohio-4018; State v. Seese, 9th Dist. Nos. 01CA007852 01CA007889, 2002-Ohio-1998; State v. Brown, 2nd Dist. No. 18643, 2002-Ohio-0277.
{157} Given the nature of both the U.S. Supreme Court's and Ohio's caselaw when Appellant was sentenced, it was reasonable for Appellant to believe at the time of his sentencing that, because he was sentenced within the sentencing range provided by our legislature, his sentence did not violate Apprendi. I cannot criticize either a criminal defendant or his counsel for failing to make these arguments to the trial court. Given the caselaw on the subject, the trial court would not have a meaningful opportunity to correct the "error." It is unfair to punish Appellant for his inability to foresee the Supreme Court's redefinition of "statutory maximum" by invoking the procedural principle of waiver.
{158} Third, a violation of Blakely would constitute plain error. Plain errors are "errors or defects affecting substantial rights" and "may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). This rule places three limitations on this court's ability to recognize plain error: 1) there must be a deviation from a legal rule; 2) the error must be an obvious defect in the trial proceedings; and, 3) the error must have affected the outcome of the trial. State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-0068.
{159} Clearly, a violation of Blakely would be a deviation from a legal rule, is an obvious defect in the trial court's proceedings, and affects the outcome of the trial. If a criminal is tried and sentenced in violation of his Sixth Amendment right to a trial by jury, then this is clearly an error affecting his substantial rights. Thus, no criminal defendant is completely barred from raising these issues merely because he did not raise the issue before the trial court.
{160} For all these reasons, I must dissent from the majority's conclusion that Appellant waived his ability to argue that his sentence violates his Sixth Amendment right to a trial by jury.
 Other Ohio Blakely-Related Decisions {161} In the short period of time since Blakely was decided, Ohio's appellate courts have been dealing with its ramifications. For instance, the First, Fourth, Fifth, and Twelfth Districts have issued opinions which reach the same conclusion as the majority, containing varying degrees of analysis. Berry; State v. Hughett, 5th Dist. No. 2004CAA06051, 2004-Ohio-6207; State v. Scheer, 4th Dist. No. 03CA21,2004-Ohio-4792; State v. Bell, 1st Dist. No. C-030726, 2004-Ohio-3621. On the other hand, the Eighth District has remanded a case for further proceedings because of Blakely even though it found the trial court committed no error under Ohio's sentencing statutes when imposing an offender to maximum sentences. State v. Murrin, 8th Dist. No. 83482,2004-Ohio-6301. In another decision, it noted that it seems "that the `statutory range' of sentences that the trial court could impose on defendant, who had not previously served a prison term, was the shortest prison sentence" post-Blakely. State v. Mason, 8th Dist. No. 84061,2004-Ohio-5388, ¶ 16. And in yet another decision, the Eighth District invalidated an otherwise valid order that sentences be served consecutively because of Blakely. State v. Moore, 8th Dist. No. 83653,2004-Ohio-5383.
{162} Clearly, Ohio's appellate courts are conflicted over exactly howBlakely impacts existing Ohio felony sentencing law. Given this conflict, I can understand the majority's position on the subject. Nevertheless, I must respectfully disagree with its conclusion.
 Sentencing an Offender under R.C. 2929.14(B) {163} The statutes governing felony sentencing presume that an offender should be sentenced to the shortest possible prison term. A trial court can only sentence an offender to more than the shortest possible prison term if it makes certain findings.
{164} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
{165} A trial court cannot sentence an offender to more than the minimum possible prison term unless it finds either 1) that the offender has previously served a prison term, 2) that the shortest prison term will demean the seriousness of the offender's conduct, or 3) that the shortest prison term will not adequately protect the public from future crime by the offender or others. See State v. Edmonson, 86 Ohio St.3d 324,1999-Ohio-0110.
{166} The presumption codified in R.C. 2929.14(B) places felony sentences in Ohio squarely within Blakely's scope. A judge cannot sentence an offender to more than the minimum possible prison term based solely on the elements of the crime found by the jury. Instead, R.C. 2929.14(B) requires that the trial court consider the factors in R.C. 2929.12, factors which are based on facts not found by the jury, so it can independently find additional facts justifying a greater sentence. Thus, in Ohio the minimum possible prison term for each offense is actually the statutory maximum for Apprendi purposes. Such a conclusion may seem counterintuitive, but is inescapable.
{167} Distinguishing Ohio's sentencing structure from Washington's simply because Washington's law is more structured than Ohio's misses the point. At the lowest level, our sentencing laws are indistinguishable from those at issue in Blakely. They require that the trial court make findings based on facts the jury was not asked to find in order to sentence the offender to more than the "statutory maximum" punishment.
{168} The findings the trial court made in this case, that the shortest possible prison sentence would demean the seriousness of Appellant's conduct and that the shortest prison term will not adequately protect the public from future crime by the offender or others, are not "facts" like those constituting an element of an offense. Instead, they are more akin to broader conclusions, such as finding a defendant guilty of an offense or negligent, which are based on specific facts. As will be discussed below, this distinction does not mean that a trial court may make those findings in a post-Blakely environment. But the analysis is a bit more nuanced than simply concluding that an offender's sentence violatesBlakely because the trial court made a factual finding.
 Seriousness of the Offender's Conduct {169} In this case, the trial court found that the shortest possible prison sentence would demean the seriousness of Appellant's conduct, one of the findings found in R.C. 2929.14(B). When making this determination, the trial court must consider the non-exhaustive list of factors in R.C. 2929.12(B) and (C). R.C. 2929.12(A). The factors in R.C. 2929.12(C) mitigate the seriousness of the conduct and, therefore, may be found by the trial court since they do not enhance the penalty imposed upon that offender. But the presence of the R.C. 2929.12(B) factors make the offender's conduct more serious than that normally constituting the offense.
{170} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
{171} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
{172} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
{173} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
{174} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
{175} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
{176} "(6) The offender's relationship with the victim facilitated the offense.
{177} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
{178} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
{179} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children." R.C. 2929.12(B).
{180} These factors appear to be indistinguishable from those Apprendi
and Blakely held must be found by a jury. For instance, R.C. 2929.12(B)(8) is the same as that addressed in Apprendi. And many of them are actually elements of various offenses. For instance, the victim's age (R.C. 2929.12(B)(1)) is an element of many sexually oriented offenses, such as rape (R.C. 2907.02(A)(1)(b)), unlawful sexual conduct with a minor (R.C. 2907.04), gross sexual imposition (R.C. 2907.05(A)(4)), sexual imposition (R.C. 2907.06(A)(4)), importuning (R.C. 2907.07), and disseminating matter harmful to juveniles (R.C. 2907.31). "Serious physical harm" (R.C. 2929.12(B)(2)) is an element of aggravated vehicular assault (R.C. 2903.08), felonious assault (R.C. 2903.11(A)(1)), aggravated assault (R.C. 2903.12(A)(2)), assault (R.C. 2903.13(B)), permitting child abuse (R.C. 2903.15), failing to provide for a functionally impaired person (R.C. 2903.16), patient endangerment (R.C. 2903.341(E)(3)), and rape (R.C. 2907.02(B)). A person's status as a public official (R.C. 2929.12(B)(3), (4), and (5)) is an element of theft in office (R.C. 2921.41), having an unlawful interest in a public contract (R.C. 2921.42), soliciting or receiving improper compensation (R.C. 2921.43), dereliction of duty (R.C. 2921.44), and interfering with civil rights (R.C. 2921.45). A person's relationship to the victim (R.C. 2929.12(B)(6) and (9)) is an element of nonsupport of dependents (R.C. 2919.21), endangering children (R.C. 2919.22) and domestic violence (R.C. 2919.25). Finally, whether a person committed an offense for hire or as part of an organized criminal activity (R.C. 2929.12(B)(7)) is an element of Ohio's RICO statute (R.C. 2923.32), and prostitution (R.C. 2907.25).
{181} Obviously, none of the factors in R.C. 2929.12(B) are likeApprendi's sole exception for prior convictions to the general rule that a fact enhancing a sentence must be found by a jury. Instead, they are all traditionally elements that must be proven to a jury beyond a reasonable doubt. A trial court cannot conclude that the shortest prison term will demean the seriousness of the offender's conduct without relying on these facts. These are precisely the types of facts whichBlakely said must be found by a jury. In this case, the jury did not find the facts upon which the trial court could base its conclusion. Thus, the trial court could not sentence Appellant to more than the minimum possible prison term based on its finding that the shortest prison term will demean the seriousness of Appellant's conduct.
 Protecting the Public from Future Crime {182} The trial court also found that shortest prison term will not adequately protect the public from future crime by the offender or others when sentencing Appellant to more than the minimum sentence, another finding allowed by R.C. 2929.14(B). This finding is clearly related to the offender's likelihood to recidivate. See State v. Short, 6th Dist. No. L-03-1117, 2004-Ohio-2050, ¶ 12. But as will be seen, not all of the factors which make an offender more likely to commit future offenses are related to the offender's criminal record. Thus, a trial court may be allowed to make this finding in some cases, but not in others.
{183} As stated above, Apprendi's basic holding is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Its exception for the fact of a prior conviction was based on the Court's previous decision in Almendarez-Torres v. United States (1998), 523 U.S. 224.Apprendi at 487-490.
{184} In Almendarez-Torres, the Court was asked to decide, among other things, whether a jury had to find that a defendant had a prior conviction before a trial court could consider that prior conviction when sentencing the defendant. It concluded that a jury did not have to find this fact in order for a trial court to enhance a defendant's sentence because of the prior conviction.
{185} "First, the sentencing factor at issue here — recidivism is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. See, e.g., Parke v. Raley, 506 U.S. 20
(1992) (Recidivism laws `have a long tradition in this country that dates back to colonial times' and currently are in effect in all 50 States); U.S. Dept. of Justice, Office of Justice Programs, Statutes Requiring the Use of Criminal History Record Information 17-41 (June 1991) (50-state survey); USSG §§ 4A1.1, 4A1.2 (Nov. 1997) (requiring sentencing court to consider defendant's prior record in every case). Consistent with this tradition, the Court said long ago that a State need not allege a defendant's prior conviction in the indictment or information which alleges the elements of an underlying crime, even though the conviction was `necessary to bring the case within the statute.' Graham v. WestVirginia, 224 U.S. 616, 624 (1912). That conclusion followed, the Court said, from `the distinct nature of the issue,' and the fact that recidivism `does not relate to the commission of the offense, but goes tothe punishment only, and therefore . . . may be subsequently decided.' Id., at 629 (emphasis added). The Court has not deviated from this view. See Oyler v. Boles, 368 U.S. 448, 452 (1962) (due process does not require advance notice that trial for substantive offense will be followed by accusation that the defendant is an habitual offender);Parke, supra, at 27 ('[A] charge under a recidivism statute does not state a separate offense, but goes to punishment only'). And, as we said before, infra, at 5-6, Congress, reflecting this tradition, has never, to our knowledge, made a defendant's recidivism an element of an offense where the conduct proscribed is otherwise unlawful. See United States v.Jackson, 824 F. 2d 21, 25, and n. 6 (CADC 1987) (R. Ginsburg, J.) (referring to fact that few, if any, federal statutes make `prior criminal convictions . . . elements of another criminal offense to be proved before the jury'). Although these precedents do not foreclose petitioner's claim (because, for example, the state statute at issue inGraham and Oyler provided for a jury determination of disputed prior convictions), to hold that the Constitution requires that recidivism be deemed an `element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as `go[ing] to the punishment only.' Graham, supra, at 629." Id. at 243-244.
{186} Subsequently, the Court clarified that when it refers to "the fact of a prior conviction," it means facts relating to the defendant's likelihood to recidivate. See Jones v. United States (1999), 526 U.S. 227,248-249 (The decision in Almendarez-Torres "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment"). Thus, the Constitution allows a judge to consider facts relating to the offender's likelihood to recidivate without having those facts proven by a jury. This is the conclusion the Second District reached in Sour.
 {187} When determining whether the shortest prison term will not adequately protect the public from future crime by the offender or others, the trial court must consider the factors in R.C. 2929.12(D) and (E). R.C. 2929.12(A). R.C. 2929.12(E) deals with factors which make recidivism less likely and, as such, are unaffected by Blakely since they do not enhance the possible penalty. Some of the factors in R.C. 2929.12(D), which gives a nonexhaustive list of factors that indicate that an offender is more likely to commit future crimes, deal exclusively with the offender's criminal record. But some of them do not.
{188} "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
{189} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under postrelease control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.
{190} "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.
{191} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
{192} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
{193} "(5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D).
{194} Because a court may consider facts relating to the offender's likelihood to recidivate without having those facts proven by a jury, it may consider the factor in R.C. 2929.12(D)(1). It would be strange to say that a jury does not need to find that the offender has a prior conviction, but that it would need to find that the defendant committed the offense while serving a punishment for a prior offense. And the factor in R.C. 2929.12(D)(2) is a restatement of Apprendi's exception for prior convictions. Thus, a trial court could find that the shortest prison term will not adequately protect the public from future crime by the offender or others if its finding is based solely on these two factors.
{195} The same cannot be said for the remaining factors. These factors are all judgment calls involving the weighing of facts. Thus, they are more like the seriousness factors than they are the fact of a prior conviction. In this case, the trial court's finding was based on these factors, not solely on those found in R.C. 2929.12(D)(1) and (2). Thus, it could not sentence Appellant to more than the minimum sentence on this basis either.
{196} Because the jury did not find the facts forming the basis of the trial court's findings allowing it to sentence Appellant to more than the minimum possible prison term for each offense, the trial court erred when doing so.
 Consecutive Sentences {197} Appellant also argues that the trial court's decision to order that his sentences be served consecutively also violates Blakely. As stated above, the trial court did not properly impose consecutive sentences under Ohio's current sentencing structure, making it unnecessary to determine this particular constitutional issue. See Stateex rel. Mason v. Griffin, ___ Ohio St.3d ___, 2004-Ohio-6384, ¶ 20;State ex rel. DeBrosse v. Cool, 87 Ohio St.3d 1, 7, 1999-Ohio-0239
("Courts decide constitutional issues only when absolutely necessary").
 Conclusion {198} The inescapable conclusion when looking at Ohio's felony sentencing structure in light of both Apprendi and Blakely is that sentencing an offender to more than the shortest possible prison sentence will, in many cases, violate that offender's right to a jury trial. Such is the case here.
{199} Because of the conflict among many members of the judiciary in this state regarding whether and how Blakely applies to the most basic aspects of felony sentencing in Ohio, I trust that the Ohio Supreme Court will soon deal with some of these issues to offer both the legal community and the citizens as a whole definitive guidance on this important issue. I would certify a conflict with those courts which have found that Blakely does not apply. The majority should do the same with the Eighth District.
{200} In this case the trial court's decision must be reversed and this cause remanded to the trial court to properly resentence Appellant in accordance with Blakely.