[Cite as *State v. Gonzales*, 2015-Ohio-461.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                                    Court of Appeals No. WD-13-086

     Appellee                                              Trial Court No. 12 CR 412

v.

Rafael Gonzales                                         **DECISION AND JUDGMENT**

     Appellant                                            Decided:  February 6, 2015

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
Gwen Howe-Gebers, Chief Assistant Prosecuting Attorney,
and David T. Harold, Assistant Prosecuting Attorney, for appellee.

Andrew R. Mayle, Jeremiah S. Ray and Ronald J. Mayle,
for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Rafael Gonzales, appeals the judgment of the Wood County
Court of Common Pleas, sentencing him to eleven years in prison following a jury trial in
which he was found guilty of possession of cocaine with a major drug offender
specification.  We affirm, in part, and reverse, in part.

## A. Facts and Procedural Background

{¶ 2} This matter arises from appellant's purchase of cocaine from a confidential informant, Saul Ramirez, on July 26, 2012. On the day of the transaction, Ramirez recorded a telephone conversation with appellant during which appellant agreed to meet with Ramirez in order to purchase cocaine. Appellant proceeded to meet with Ramirez at a Meijer parking lot in Wood County, Ohio, so that he could inspect the drugs prior to making the purchase. During the meeting, appellant tested the quality of the cocaine, negotiated a price, and scheduled a time for the two to meet in order to complete the transaction. Appellant and Ramirez agreed to meet at a Super 8 motel located along I-280 in Wood County.

{¶ 3} Later in the afternoon, appellant arrived at the motel and was instructed to meet Ramirez in room 105. After arriving and meeting with Ramirez, appellant became upset because Ramirez would not produce the cocaine until appellant presented the purchase money. Eventually, appellant displayed $58,000 in cash, an amount sufficient to purchase two kilograms of cocaine. Thereafter, an undercover officer posing as a truck driver entered the room with two kilograms of cocaine. The first kilogram, later admitted at trial as exhibit No. 3, consisted of manufactured cocaine surrounding a baggie containing genuine cocaine weighing 139 grams. The baggie was separately admitted at trial as exhibit No. 13. The second kilogram, admitted at trial as exhibit No. 4, contained a tracking device planted inside the manufactured cocaine. After the money was counted, appellant took possession of the two kilograms of cocaine and departed.

2.

{¶ 4} Appellant was subsequently arrested, after which the drugs were seized by the arresting officers and tested by the Ohio Bureau of Criminal Investigation (BCI). The BCI test confirmed that the substance contained inside exhibit No. 13 was indeed cocaine. However, the BCI analyst that performed the test was unavailable to testify at trial. Consequently, the test results were not admitted at trial. Nonetheless, the state retested the substance on November 1, 2013, four days prior to trial. The results of the test were provided to appellant. However, because appellant was given the test results only a short time prior to trial, the trial court excluded the second BCI report and both test results out of concern that their use at trial would violate Crim.R. 16(K).

{¶ 5} On August 1, 2012, appellant was indicted on one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f). The indictment also included a major drug offender specification pursuant to R.C. 2929.01 based on the allegation that the amount of cocaine equaled or exceeded 100 grams.

{¶ 6} Appellant subsequently entered a plea of not guilty. Following pretrial discovery, a jury trial commenced on November 5, 2013. During the trial, the state solicited testimony from several witnesses, including Ramirez and numerous law enforcement officers. Appellant's primary argument at trial centered on the state's failure to establish that the substance seized from appellant was cocaine. While the state was not permitted to utilize the BCI test results to identify the seized substances as cocaine, several witnesses, including Ramirez, stated that the substance was cocaine based on their experience with the drug. Specifically, Ramirez conducted a visual and

3.

olfactory examination of the substance contained in exhibit No. 13. Based on his examination, Ramirez testified that the substance was, in fact, cocaine. Later in the trial, the state called Mark Denomy, the officer who prepared exhibit No. 13. Denomy indicated that he had participated in hundreds of cocaine operations. He went on to describe the characteristics of cocaine, noting that it has a distinct smell that makes it readily identifiable. Ultimately, Denomy stated that exhibit No. 13 contained cocaine. Moreover, the lead investigator on this case, Mark Apple, stated that exhibit No. 13 contained cocaine. Apple smelled the cocaine, after which he testified: "There is a definite odor to cocaine and exhibit 13 did have that odor."

{¶ 7} At the conclusion of the evidence, the jury found appellant guilty of possession of cocaine. Additionally, the jury found that appellant possessed an amount of cocaine that equaled or exceeded 100 grams. The trial court immediately proceeded to sentencing, where it sentenced appellant to 11 years in prison and imposed a $15,000 fine. Appellant's timely appeal followed.

## B. Assignments of Error

{¶ 8} On appeal, appellant asserts the following assignments of error for our consideration:

> I. The trial court erred in permitting law-enforcement officers to identify the disputed substance as "cocaine" in the absence of any scientific testing or expert reports prepared by the officers and timely disclosed under Crim.R. 16(K).

4.

II. The trial court erred in letting this case go to the jury when there was not sufficient, competent evidence identifying the disputed substance as "cocaine" as defined by R.C. 2925.01(X).

III. The trial court erred in refusing to instruct the jury on the definition of "cocaine" set forth in R.C. 2925.01(X).

IV. Because there is no evidence in this case as to the weight of actual cocaine involved, the trial court erred by allowing the jury to consider the entire weight of the disputed substance in determining whether Mr. Gonzales possessed more than 100 grams of "cocaine."

V. The trial court erred in permitting the state to enlarge its bill of particulars after trial started while simultaneously refusing to give an "other bad acts" limiting instruction, which together violated Gonzales's double jeopardy, grand-jury presentment, and due process rights guaranteed under the Ohio and United States Constitutions.

## II. Analysis

### A. Drug Identification Testimony

{¶ 9} In appellant's first assignment of error, he argues that the trial court erred in allowing the state's witnesses to identify the substance contained in exhibit No. 13 as cocaine without first requiring the state to certify the witnesses as experts and comply with the mandates of Crim.R. 16(K). Moreover, appellant's second assignment of error alleges that the trial court erred in submitting this case to the jury where there was

insufficient evidence to establish that exhibit No. 13 contained cocaine under R.C. 2925.01(X). Because these assignments of error are interrelated, we will address them simultaneously.

{¶ 10} When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.E.2d 560 (1979); *see also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Therefore, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jenks* at paragraph two of the syllabus.

{¶ 11} In the present case, appellant argues that the state failed to identify the cocaine through the use of admissible testimony. While he acknowledges that the cocaine was identified by Ramirez and several police officers, appellant argues that the identification testimony was given in the form of expert testimony, which should have been excluded since the state failed to comply with Crim.R. 16(K). Indeed, appellant contends that the cocaine could *only* have been identified through the use of expert

6.

testimony given the technical nature of the statutory definition of cocaine under R.C. 2925.01(X).

{¶ 12} We begin our analysis of appellant's first and second assignments of error by examining whether expert testimony is required to identify a substance as "cocaine," as that term is defined in R.C. 2925.01(X). R.C. 2925.01(X) defines cocaine as follows:

{¶ 13} "Cocaine" means any of the following:

(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;

(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;

(3) A salt, compound, derivative, or preparation of a substance identified in division (X)(1) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine.

{¶ 14} Given the technical nature of the definition of cocaine, appellant urges us to "hold that scientific testimony is required to identify powder cocaine under the circumstances of this case." Appellant asserts that this issue has not been addressed by the Supreme Court of Ohio. Thus, in support of his argument, appellant points to a

7.

decision from the Supreme Court of North Carolina entitled *State v. Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658 (2009).

{¶ 15} In *Llamas-Hernandez,* the defendant was convicted of trafficking in cocaine by possession of 28 grams or more. Llamas-Hernandez's conviction arose from a meeting with a confidential informant, at which he offered to sell the informant one kilogram of cocaine. Immediately after the offer was made, the informant left the meeting and contacted the police. *State v. Llamas-Hernandez*, 189 N.C.App. 640, 642, 659 S.E.2d 79 (2008). Soon thereafter, police officers arrived on the scene and executed a search warrant, ultimately discovering one kilogram of white powder. Consequently, the white powder was tested and determined to be cocaine. Llamas-Hernandez was charged, in a separate case, with trafficking in cocaine. As a result of the chemical analysis test, Llamas-Hernandez pleaded guilty. *Id.* at 643.

{¶ 16} Following the discovery of the kilogram of cocaine, officers conducted a second search at Llamas-Hernandez's apartment with the consent of a cotenant. During their search of the apartment, officers opened the door to a linen closet, where they discovered a white powdery substance weighing 55 grams. This substance was tested and found to contain cocaine, but the report was not admitted at trial. Nonetheless, Llamas-Hernandez was charged with trafficking in cocaine relating to the 55 grams of cocaine, and a trial ensued. *Id.*

{¶ 17} At trial, the state utilized the testimony of its investigating officers to identify the white powdery substance that was found in Llamas-Hernandez's apartment.

8.

Upon questioning, the officers identified the substance as cocaine. The officers based their conclusions with respect to the identity of the substance on visual inspections. Llamas-Hernandez objected to the use of such testimony, arguing that it was improper for a lay witness to identify cocaine given the technical description of cocaine under N.C.G.S. § 90-90(1)(d).[1] The trial court overruled the objection, and the state was permitted to proceed. Llamas-Hernandez was subsequently found guilty of trafficking in cocaine.

{¶ 18} Llamas-Hernandez timely appealed his conviction, arguing that the trial court erred in allowing the state to identify the disputed substance as cocaine through the use of lay witness officer testimony. A divided panel of the Court of Appeals of North Carolina affirmed the conviction. In their decision, the majority relied upon its prior decision in *State v. Freeman*, 185 N.C.App. 408, 648 S.E.2d 876 (2007), which held that lay opinion testimony from a police officer was admissible to identify pills found on a defendant as crack cocaine. *State v. Llamas-Hernandez*, 189 N.C.App. at 644, 659 S.E.2d 79.

---

[1] N.C.G.S. § 90-90(1)(d) describes cocaine as follows:

> Cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or coca leaves and any salt, isomer, salts of isomers, compound, derivative, or preparation of coca leaves, or any salt, isomer, salts of isomers, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocanized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

9.

{¶ 19} Notwithstanding the court's decision in *Freeman*, the dissent concluded that police officers should not be allowed to "express a lay opinion as to the chemical composition of a white powder." *Id.* at 650 (Steelman, J., dissenting). The dissent, noting the "technical, scientific definition of cocaine," stated that "the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance." *Id.* at 652. As to the applicability of *Freeman*, the dissent found that the cases were not analogous based, in part, on the chemical differences between crack cocaine (which was at issue in *Freeman*) and powdered cocaine. Moreover, the dissent noted that a laboratory report was admitted in *Freeman* that conclusively established the identity of the crack cocaine. No such report was admitted to establish the identity of the powdered cocaine. Thus, the dissent found that lay witness testimony could not establish the identity of the substance, especially since it lacked any "distinguishing characteristics" upon which to conclude, based only on a visual inspection, that the substance was cocaine. *Id.* at 654 (Steelman, J., dissenting).

{¶ 20} Llamas-Hernandez subsequently appealed the decision of the court of appeals to the North Carolina Supreme Court. In a one-sentence decision, the court stated: "For the reasons stated in the dissenting opinion, the decision of the Court of Appeals is reversed." *Llamas-Hernandez*, 363 N.C. at 8, 673 S.E.2d 658.

{¶ 21} Having examined the facts of *Llamas-Hernandez*, we find that the case is analogous to the facts in the case sub judice. Nevertheless, we disagree with appellant's assertion that the Supreme Court of Ohio has not spoken on the issue of whether a lay

witness may identify a controlled substance. Indeed, in *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001), syllabus, the court stated: "The experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." The court went on to state that the identification of a controlled substance by a lay witness is not "based on specialized knowledge within the scope of Evid.R. 702, but rather * * * upon a layperson's personal knowledge and experience." *Id.* at 297. Citing Evid.R. 701, the court indicated that, "[a]lthough these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue." [2] *Id.*

{¶ 22} "A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled." *State v. White*, 2013-Ohio-51, 988 N.E.2d 595, ¶ 201 (6th Dist.), citing *Schlachet v. Cleveland Clinic*, 104 Ohio App.3d 160, 168, 661 N.E.2d 259 (8th Dist.1995). In light of the clear instruction from the Supreme Court of Ohio allowing lay witness identification of controlled substances, we decline to adopt appellant's view, first espoused by the North

---

[2] Evid.R. 701 states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

11.

Carolina Supreme Court in *Llamas-Hernandez*, that expert testimony was required to identify the cocaine in this case.

{¶ 23} For drug identification testimony to be admissible under *McKee*, the state need only establish the competence of the proposed lay witness. Competence is established in this context by "providing the court with a foundation that demonstrates that the lay witness has a sufficient amount of experience and knowledge either from having dealt with or having used the same type of controlled substance in the past that he or she is now being asked to identify." *State v. Maag*, 3d Dist. Hancock No. 5-03-32, 2005-Ohio-3761, ¶ 32, citing *McKee* at 297.

{¶ 24} Here, the state laid a sufficient foundation prior to soliciting drug identification testimony from Ramirez and the officers involved in the controlled buy. Specifically, Ramirez testified that he gained a familiarity with cocaine while trafficking the substance for a 15-year period prior to becoming a confidential informant. When asked whether exhibit No. 13 contained cocaine, Ramirez inspected the substance, using both sight and smell, and identified it as cocaine.

{¶ 25} In addition to Ramirez's identification testimony, the state questioned several officers regarding whether the substance identified as exhibit No. 13 was in fact cocaine. First, the state called Denomy, who stated that he had extensive experience with cocaine, having participated in hundreds of cocaine operations. When asked to describe the appearance of cocaine, Denomy stated:

Cocaine is a white powder, usually it has a flake to it. Usually you can tell the better cocaine by the color like a fish scale almost. Usually the fake looking cocaine doesn't have that to it. It's easier for me to identify it by the smell than the look. There's a certain chemical odor to it that once you smell cocaine it's a consistent you never really forget.

{¶ 26} The state then presented Denomy with exhibit No. 13, which Denomy identified as cocaine.

{¶ 27} Following Denomy's testimony, the state called Mark Ellinwood, who has been employed as a special agent with BCI for 17 years. Ellinwood was the officer who prepared exhibit No. 13 for sale to appellant. Prior to identifying exhibit No. 13 as cocaine, Ellinwood explained that he had "years of experience, approximately 24 years experience handling a canine that also involves handling drugs on a weekly or daily basis for training, whether it's cocaine, crack cocaine, heroin, the various drugs. I'm very familiar with what cocaine looks like."

{¶ 28} Later in the trial, the state called Kip Lewton, who was involved in this case while working as an agent for the DEA. Lewton explained that he was familiar with cocaine as a result of his history in law enforcement spanning several decades. During that time, Lewton was involved in the undercover purchase of drugs. When asked what types of drugs he would generally purchase, he answered: "Predominantly cocaine, marijuana, little bit of heroin, those are the three primary drugs." He went on to describe cocaine, stating:

13.

Cocaine is a powder substance, usually when it's pressed into a kilo it will have a chunky consistency, either solid brick if it's still in the deal or if it's broken off a lot of times they'll adulterate it with cuts depending on then what level that you purchase. And it will have a scaly kind of look to it at times. A certain kind of smell to it kind of like an acetone chemical smell.

It's one of those things once you smell it, it permeated like a skunk; if you drive down the road and smell a skunk you don't see it but you always remember that smell.

{¶ 29} Upon being presented with exhibit No. 13, Lewton identified the substance as "cocaine that was pressed into a brick form. At this point it is kind of breaking apart. It has that smell that I described and chemical smell that I'm familiar with."

{¶ 30} Finally, as its last witness, the state called Apple, who also indicated that exhibit No. 13 contained cocaine. Apple is a special agent with BCI, a position he has held since 1996. While at BCI, Apple has purchased cocaine during undercover operations. While testifying, Apple described cocaine in great detail, stating: "You can tell by looking at, like cocaine for example, the quality of the cocaine based on its texture, based on its coloration, based on the fish scale, people have talked to you about already a shininess that occurs on the cocaine." On cross-examination, Apple was asked why he smelled exhibit No. 13 prior to identifying it, to which he responded: "There is a definite odor to cocaine and exhibit 13 did have that odor."

14.

**{¶ 31}** Based upon the foregoing, we find that the witnesses used by the state to identify exhibit No. 13 as cocaine possessed a sufficient amount of experience and knowledge to do so.  Indeed, the witnesses each possessed decades of experience either as a trafficker of cocaine or as law enforcement officers.

**{¶ 32}** Having found the state's drug identification testimony to be admissible in this case, we conclude that a rational trier of fact could have found that the substance contained in exhibit No. 13 was cocaine.  Accordingly, appellant's first and second assignments of error are not well-taken.

### B.  Jury Instructions

**{¶ 33}** In his third assignment of error, appellant argues that the trial court erred in refusing to instruct the jury on the definition of "cocaine" set forth in R.C. 2925.01(X).

**{¶ 34}** Generally, requested jury instructions should be given if they are a correct statement of law as applied to the facts of the case.  *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).  "[A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981).  Prejudicial error is found in a criminal case where a court refuses to give an instruction that is pertinent to the case, states the law correctly, and is not covered by the general charge.  *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992).  A determination as to jury instructions is a matter left to the sound discretion of the trial court.  *Id.*  Thus, we review a trial court's decision regarding jury instructions for an abuse of discretion.  *State v.*

15.

*Lillo*, 6th Dist. Huron No. H-10-001, 2010-Ohio-6221, ¶ 15.  Abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 35} In the case sub judice, appellant requested that the trial court provide an instruction on the statutory definition of cocaine set forth in R.C. 2925.01(X).  In supporting his request, appellant focused on the lack of evidence presented at trial as to the weight of actual cocaine contained in exhibit No. 13.  He reasoned that the technical definition of cocaine contained in R.C. 2925.01(X) limited his liability to the weight of the cocaine, apart from the weight of any other substances that were mixed with the cocaine.  The trial court considered appellant's argument, but determined that the requested instruction was unnecessary in light of the following instruction regarding the amount of the cocaine involved in this case:  "Amount.  If your verdict is guilty, you will separately decide beyond a reasonable doubt if the amount of cocaine involved at the time of the offense equaled or exceeded 100 grams.  If your verdict is not guilty, you will not decide this issue."

{¶ 36} Having reviewed the instructions that were provided to the jury in this case, we find that the requested instruction would have been superfluous.  Importantly, appellant's argument in support of the requested instruction centered on the state's lack of evidence as to the *amount* of cocaine contained in exhibit No. 13.  The fact that exhibit No. 13 contained cocaine was clearly established by several of the state's witnesses.  What remained at issue was *how much* cocaine appellant possessed and whether the

16.

entire weight of the substance should be included in determining whether the amount equaled or exceeded 100 grams. R.C. 2925.01(X) does not speak to this issue. Rather, the relevant statute is R.C. 2925.11(C)(4), the substance of which was already covered in the general charge to the jury. Because the jury instructions adequately informed the jury on the relevant issues in this case, we conclude that the trial court did not abuse its discretion in refusing to provide the requested instruction.

{¶ 37} Accordingly, appellant's third assignment of error is not well-taken.

### C. Penalty Enhancement Under R.C. 2925.11(C)(4)(f)

{¶ 38} In appellant's fourth assignment of error, he argues that the trial court erred by allowing the jury to consider the entire weight of exhibit No. 13 in determining whether he possessed 100 or more grams of cocaine.

{¶ 39} The statutory provision relevant to our disposition of appellant's fourth assignment of error is R.C. 2925.11, which states, in relevant part:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> * * *
>
> (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates

17.

division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

* * *

(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

{¶ 40} Referring to R.C. 2925.11(C)(4)(f), appellant asserts that only the weight of the actual cocaine contained in exhibit No. 13 should have been considered. We agree.

{¶ 41} At the outset, we note that the plain language of R.C. 2925.11(C)(4) supports appellant's argument. The primary purpose of statutory construction is to give effect to the intention of the General Assembly. *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16, 20, 242 N.E.2d 342 (1968), paragraph two of the syllabus. A court must first look to the language itself to determine the legislative intent. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). "If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." *Id.* at 105-106, citing *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944).

{¶ 42} Here, R.C. 2925.11(C)(4)(f) increases the level of the offense for possession of cocaine when the amount possessed "equals or exceeds one hundred grams

18.

*of cocaine*." (Emphasis added.) The emphasized language clearly modifies the weight in the statute. This becomes even more obvious upon an examination of the manner in which other drugs are treated under R.C. 2925.11. Concerning marihuana, R.C. 2925.11 increases the level of the offense "[i]f the amount of the drug involved equals or exceeds one hundred grams but is less than two hundred grams." Importantly, the statute does not state 100 or 200 grams *of marihuana*. Further, heroin offenses are amplified under R.C. 2925.11 "[i]f the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams." Once again, the statute does not indicate one gram *of heroin*.

{¶ 43} Having found that the relevant inquiry in determining the level of the offense under R.C. 2925.11(C)(4)(a) through (f) centers on a determination of the amount of actual "cocaine" contained in the mixture, we now turn to the definition of "cocaine" in R.C. 2925.01(X) and 3719.41. Notably, the definition of cocaine differs from that of many other drugs. Most drugs are defined broadly such that a mixture containing the particular drug falls within the definition. For example, "marihuana" is defined as "Any material, compound, mixture, or preparation that contains any quantity of [marihuana]." R.C. 3719.41 (Schedule I(C)(19)). Likewise, R.C. 3719.41 defines lysergic acid diethylamide (LSD) as "Any material, compound, mixture, or preparation that contains any quantity of [LSD]." R.C. 3719.41 (Schedule I(C)(18)). Similarly, the definition of hashish includes "Any material, compound, mixture, or preparation that contains any quantity of [hashish]." R.C. 3719.41 (Schedule I(C)(32)).

19.

**{¶ 44}** Unlike the broad definitions used for marihuana, LSD, and hashish, cocaine is defined under R.C. 3719.41 (Schedule II(A)(4)) as

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves (including cocaine and ecgonine, their salts, isomers, and derivatives, and salts of those isomers and derivatives), and any salt, compound, derivative, or preparation thereof that is chemically equivalent to or identical with any of these substances * * *.

**{¶ 45}** Cocaine is similarly defined in R.C. 2925.01(X). In both statutes, "cocaine" does not include the entire "mixture" as is the case with marihuana, LSD, and hashish. We must presume that the legislature's failure to include such language in the definition of cocaine was intentional. *See State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9, quoting *Columbus-Suburban Coach Lines v. Public Utilities Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) ("'[I]t is the duty of this court to give effect to the words used, not to delete words used or to insert words not used.'"). Consequently, we conclude that a defendant may be held liable for cocaine offenses under R.C. 2925.11 for only that portion of the disputed substance that is chemically identified as cocaine.

**{¶ 46}** Here, the state offered no evidence as to the purity of the cocaine. While there was testimony concerning the weight of exhibit No. 13, the record contains no evidence that would allow a factfinder to determine the weight of actual cocaine contained therein. Nevertheless the state cites several Ohio cases that stand for the

20.

proposition that the purity of cocaine is immaterial, and that the entire mixture may be weighed for purposes of the penalty enhancement. *State v. Brown*, 107 Ohio App.3d 194, 668 N.E.2d 514 (3d Dist.1995); *State v. Neal*, 3d Dist. Hancock No. 5-89-6, 1990 WL 88804 (June 29, 1990); *State v. Fuller*, 1st Dist. Hamilton No. C-960753, 1997 WL 598404 (Sept. 26, 1997); *State v. Remy*, 4th Dist. Ross No. 03CA2731, 2004-Ohio-3630; *State v. Chandler*, 157 Ohio App.3d 672, 2004-Ohio-3436, 813 N.E.2d 65 (5th Dist.); *State v. Morris*, 8th Dist. Cuyahoga No. 67401, 1995 WL 571998 (Sept. 28, 1995); *State v. Brooks*, 8th Dist. Cuyahoga No. 50384, 1986 WL 2677 (Feb. 27, 1986). Notably, the above cases rely upon a prior version of R.C. 2925.01 that defined the bulk amount of a controlled substance as "[a]n amount equal to or exceeding ten grams * * * of a compound, mixture, preparation, or substance that is or contains any amount of * * * cocaine." R.C. 2925.01 was subsequently amended in 1995 and the foregoing provision was removed. *See* Am.S.B. No. 2, 1995 Ohio Laws File 50. Consequently, we conclude that the cases cited by the state are inapposite.

{¶ 47} In light of the foregoing, we hold that the state, in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) through (f), must prove that the weight of the *actual cocaine* possessed by the defendant met the statutory threshold. *Contra State v. Smith*, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568, ¶ 14-15 ("[T]he State was not required to prove that Smith possessed or trafficked pure cocaine equal to or exceeding the statutory amount. Rather, as we have explained, it was enough that the substance * * *, as a whole, satisfied the weight requirement."). Because the state failed to

21.

introduce evidence as to the purity or weight of the cocaine in this case, we find that appellant's penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated.

{¶ 48} Accordingly, appellant's fourth assignment of error is well-taken.

### D. Amendment of Bill of Particulars

{¶ 49} In his fifth and final assignment of error, appellant argues that the trial court erred in allowing the state to amend its bill of particulars without also providing a limiting instruction to the jury on "other bad acts."

{¶ 50} Amendment of the state's bill of particulars is governed by Crim.R. 7 and R.C. 2941.30. Crim.R. 7 states, in relevant part:

(D) Amendment of indictment, information, or complaint

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * *

(E) Bill of particulars

When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and of

22.

the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.

{¶ 51} The purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). Additionally, the Supreme Court of Ohio has held that "[t]he purpose of the bill of particulars is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." *State v. Fowler*, 174 Ohio St. 362, 364, 189 N.E.2d 133 (1963).

{¶ 52} Crim.R. 7 vests the trial court with discretion when considering the state's motion to amend its bill of particulars. Thus, we review the trial court's decision for an abuse of discretion. *State v. Brumback*, 109 Ohio App.3d 65, 81, 671 N.E.2d 1064 (9th Dist.1996), citing *State v. Mundy*, 99 Ohio App.3d 275, 313, 650 N.E.2d 502 (2d Dist.1994). "[F]or the amendment to constitute reversible error, the defendant must demonstrate that the amendment hampered [his] defense or otherwise prejudiced [him]." *Id.*; *see also* R.C. 2941.30 (indicating that "no appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the reviewing court finds that the accused was prejudiced in his defense or that a failure of justice resulted").

{¶ 53} In the case sub judice, the trial court granted the state's motion to amend its bill of particulars on the last day of trial, to include appellant's initial meeting with

23.

Ramirez at the Meijer parking lot located in Wood County. Under Crim.R. 7, the state was permitted to amend its bill of particulars at any time provided the amendment did not change the name or identity of the crime charged. Appellant argues that the amendment changed the identity of the crime charged by incorporating the Meijer meeting and thereby making it impossible to determine whether the jury convicted him for possession of cocaine as a result of the meeting at Meijer or the meeting at the Super 8 motel later that day. The state, for its part, contends that the amendment did not change the identity of the crime charged because the meeting at Meijer was part of the same course of criminal conduct for which appellant was initially indicted.

{¶ 54} Our examination of the facts in this case reveals that the meeting at Meijer was a necessary predicate to the meeting at Super 8. Relevant to our resolution of this issue, Apple stated the following concerning the purpose of the meeting at Meijer: "We wanted to show [appellant] an actual kilogram of cocaine so he could take a look at it, so [he] could take a look at it, and open it if he wanted to so he would have a good idea of what he was looking at." When asked whether the meeting at Meijer was part of the broader transaction, Apple indicated that it was, noting that the meeting was scheduled so that appellant "could see what the quality of the cocaine was, so he could take his knowledge of what it was to the people that he was introducing or that were bringing the money in, so that he would know the quality of the cocaine." Apple's testimony establishes that the meeting at Meijer was arranged in order to allow appellant to sample the cocaine to determine its purity, arrive at acceptable terms with regard to price and

quantity, and establish a place and time to meet to complete the transaction. Following the meeting at Meijer, appellant traveled to Toledo, acquired the cash needed to purchase the cocaine, and proceeded to meet Ramirez at Super 8 where he actually purchased the cocaine and took possession of it.

{¶ 55} In light of the foregoing, we agree with the state that the meeting at Meijer was part of a broader course of criminal conduct that culminated in appellant's purchase of cocaine from Ramirez at the Super 8 motel. As a result, we find that the state's amendment of the bill of particulars to include the meeting at Meijer did not change the identity of the crime charged.

{¶ 56} Having found that the amendment to the state's bill of particulars did not change the identity of the crime with which appellant was charged, we conclude that the trial court did not abuse its discretion in granting the state's motion to amend its bill of particulars. Accordingly, appellant's fifth assignment of error is not well-taken.

### III. Conclusion

{¶ 57} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellant's penalty enhancement under R.C. 2925.11(C)(4)(f) is hereby reversed and vacated, and this matter is remanded to the trial court for resentencing consistent with this decision. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24.

25.

**{¶ 58}** We recognize that our decision in this case is in conflict with the decision of the Second District Court of Appeals in *State v. Smith*, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568. Therefore, pursuant to Ohio Constitution, Article IV, Section 3(B)(4), we sua sponte certify a conflict to the Supreme Court of Ohio for review and final determination of the following question: Must the state, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(a) through (f), prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture? The parties are directed to S.Ct.Prac.R. 7.01 and 7.08 for further proceedings.

Judgment affirmed, in part,<br>and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.        _____
                 JUDGE
Stephen A. Yarbrough, P.J.

James D. Jensen, J.        _____
CONCUR.                JUDGE

                _____
                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.